**COUNCIL OF HAWAII HOTELS,**
**Plaintiff,**

v.

**Joshua C. AGSALUD, Director, Department of Labor and Industrial Relations, State of Hawaii, and Tany Hong, Attorney General, State of Hawaii, Defendants.**

**Civ. No. 84–0047.**

United States District Court,
D. Hawaii.

Sept. 17, 1984.

Robert S. Katz, Ernest C. Moore, III, John L. Knorek, Torkildson, Katz, Jossem & Fonseca, Honolulu, Hawaii, for plaintiff.

Tany S. Hong, Atty. Gen., State of Hawaii, Edward L. Correa, Jr., Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

## MEMORANDUM OPINION

TASHIMA, District Judge.

Plaintiff Council of Hawaii Hotels (the "Council")[1] seeks declaratory relief and a permanent injunction to prevent defendants, the Director of the Department of Labor and Industrial Relations ("DLIR") and the Attorney General of the State of Hawaii, from enforcing the Hawaii Prepaid Health Care Act of 1974, as amended, Haw. Rev.Stat. Ch. 393 (the "Hawaii Act" or "Act"), against plaintiff's members who have collectively bargained health care plans. Plaintiff has moved for summary judgment. The parties agree that the facts material to the disposition of plaintiff's motion are uncontroverted.

## I. BACKGROUND

In 1974, the Hawaii Legislature enacted the Hawaii Act to partially protect employees against the cost of medical care, by requiring Hawaii employers to provide prepaid health plan protection to eligible employees, in accordance with minimum standards established by the Act. The Act provided, in relevant part:

> The cost of medical care in case of sudden need may consume all or an excessive part of a person's resources. Prepaid health care plans offer a certain measure of protection against such emergencies. It is the purpose of this chapter in view of the spiraling cost of comprehensive medical care to provide this type of protection for the employees in this State. Although a large segment of the labor force in the State already enjoys coverage of this type either by virtue of collective bargaining agreements, em-

1. Plaintiff is an unincorporated, non-profit association of approximately 37 hotel employers doing business in the State of Hawaii. Among other things, it collectively bargains for and represents its members in the administration of Master Hotel Agreements with the Hotel, Restaurant Employees and Bartenders' Union, Local 5, AFL–CIO, and with the International Longshoremen's and Warehousemen's Union, Local 142, as well as individual Hotel Agreements with Local 5, Local 142 and/or other labor organizations (the "unions"). Plaintiff brings this action on behalf of its members who are covered by collective bargaining agreements with the unions. The Council's standing is not challenged. *See Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2440–41, 53 L.Ed.2d 383 (1977).

ployer-sponsored plans, or individual initiative, there is a need to extend that protection to workers who at present do not possess any or possess only inadequate prepayment coverage.

This chapter shall not be construed to interfere with or diminish any protection already provided pursuant to collective bargaining agreements or employer-sponsored plans that is more favorable to the employees benefited thereby than the protection provided by this chapter or at least equivalent thereto.

Haw.Rev.Stat. § 393–2 (1976).

(a) In addition to the policy stated in section 393–2, nothing in this chapter shall be construed to limit the freedom of employees to bargain collectively for different prepaid health care plan coverage or for a different allocation of the costs thereof. A collective bargaining agreement may provide that the employer himself undertakes to provide the health care specified in the agreement.

(b) If the employees rendering particular types of services are not covered by the health care provisions of the applicable collective bargaining agreements to which their employer is a party, the provisions of this chapter shall be applicable with respect to them. An employer or group of employers shall be deemed to have complied with the provisions of this chapter if they undertake to provide health care services pursuant to a collective bargaining agreement and the services are available to all other employees not covered by such agreement.

Haw.Rev.Stat. § 393–19 (1976).

In 1978, the Hawaii Legislature amended the Act, including § 393–2, the "findings and purpose" section, and § 393–19. As amended, § 393–2 now provides:

This chapter shall not be construed to interfere with or diminish any protection already provided pursuant to collective bargaining agreements or employer-sponsored plans that is more favorable to the employees benefited thereby than the protection provided by this chapter ·or at least equivalent thereto, *provided that presently existing collective bargaining agreements shall not be affected by the provisions of this section.*

Haw.Rev.Stat. § 393–2 (Supp.1983) (amendment emphasized).

At the same time, § 393–19(a) was amended to provide as follows:

In addition to the policy stated in section 393–2, nothing in this chapter shall be construed to limit the freedom of. employees to bargain collectively for different prepaid health care coverage, *if the protection provided by the negotiated plan is more favorable to the employees benefited than the protection provided by this chapter or at least equivalent thereto,* or for a different allocation of the costs thereof. A collective bargaining agreement may provide that the employer himself undertakes to provide the health care specified in the agreement.

Haw.Rev.Stat. § 393–19(a) (Supp.1983) (amendment emphasized) (the "Hawaii Amendment").

In *Standard Oil Co. v. Agsalud,* 442 F.Supp. 695 (N.D.Cal.1977), *aff'd,* 633 F.2d 760 (9th Cir.1980), *aff'd,* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981), it was held that the Hawaii Act was preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").[2] However, after lobbying by the Hawaii Congressional delegation and certain state officials, Congress enacted a limited

---

**2.** ERISA preempted "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). However, benefit plans maintained solely to comply with "disability insurance laws" are not preempted. 29 U.S.C. § 1003(b)(3). The Hawaii Act required that plans cover diagnosis and treatment of alcohol and drug abuse.

In *Standard Oil,* the State of Hawaii sought to enforce the alcohol and drug abuse coverage required by the Act. The district court held that since the Hawaii Act was not a "disability insurance law" within the meaning of § 1003(b)(2), the Act was preempted by ERISA, pursuant to 29 U.S.C. § 1144(a). 442 F.Supp. 695. The holding was affirmed both by the Ninth Circuit, 633 F.2d 760, and the Supreme Court, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75.

exception to ERISA's preemption provision, Pub.L. No. 97–473 § 301(a), 96 Stat. 2611, 2613 (1983), which was signed into law January 14, 1983. 29 U.S.C. § 1144(b) (1983) (the "ERISA Amendment"). The ERISA Amendment excepted the Hawaii Act as it existed on September 2, 1974, the date ERISA became effective, from ERISA's preemption provision. However, Congress continued to preempt "any amendment of the Hawaii Prepaid Health Care Act enacted after September 2, 1974, *to the extent it provides for more than the effective administration of such Act* as in effect on such date." 29 U.S.C. § 1144(b)(5)(B)(ii) (1983) (emphasis added).[3]

On February 7, 1983, the Director of DLIR notified all subject Hawaii employers that they were required to provide health care benefits to eligible employees, including those covered by collective bargaining plans, to the same extent as the Hawaii Act had provided in 1981 (when the Supreme Court affirmed that the Act was preempted), except that alcoholism and substance abuse benefits were no longer mandated. On July 26, 1983, the Council requested that the collectively bargained health care plans of its members be excluded from the

"equivalency requirements" of § 393–19. On August 15, 1983, the DLIR rejected the Council's request. DLIR took the position that the Act required the Council's collectively bargained plans to meet or exceed the mandated requirements of the Act. In support of its position, DLIR cited a State Attorney General's opinion that "all amendments [to the Hawaii Act] enacted after September 4, 1974 (except for Act 25—Substance Abuse Benefits) are for the *effective administration* of our law." DLIR further stated that although the Council's plan provided benefits in some respects superior to those required by the Hawaii Act, certain of its provisions were inferior to the requirements of the Act.[4] DLIR directed the Council to modify or supplement its collectively bargained plan accordingly. The Council then filed this action.

## II. THE ISSUE

■ The parties agree that the only issue before the Court on this motion is whether the Hawaii Amendment constituted a substantive change or whether the amendment was merely for the "effective administration" of the Act as it existed on September 2, 1974.[5] If the former is the case, defendants concede that the amend-

---

3. As it relates to the Hawaii Act, the amendment provides:

(5)(A) Except as provided in subparagraph (B), subsection (a) of this section shall not apply to the Hawaii Prepaid Health Care Act (Haw.Rev.Stat. §§ 393–1 through 393–51).

(B) Nothing in subparagraph (A) shall be construed to exempt from subsection (a)—

(i) any state tax law relating to employee benefit plans, or

(ii) any amendment of the Hawaii Prepaid Health Care Act enacted after September 2, 1974, to the extent it provides for more than the effective administration of such Act as in effect on such date.

(C) Notwithstanding subparagraph (A), parts 1 and 4 of this subtitle, and the preceding sections of this part to the extent they govern matters which are governed by the provisions of such parts 1 and 4, shall supersede the Hawaii Prepaid Health Care Act (as in effect on or after January 14, 1983), but the Secretary may enter into cooperative arrangements under this paragraph and section 1136 of this title with officials of the State of Hawaii to assist them in effectuating the policies of provisions of such Act which are superseded by such parts.

29 U.S.C. § 1144(b) (1983).

4. In his August 15, 1983 letter, the Director of DLIR explained DLIR's position, as follows:

There is no denying that your union medical benefits are superior to what the law requires after a member meets the eligibility requirements of 260 hours in a calendar quarter and continues to meet the requirements each succeeding calendar quarter. The Prepaid Health Care Law on the other hand, requires employers to provide at least the minimum benefits to employees who meet the law's eligibility requirements (20 hours a week for 4 consecutive weeks) with cost allocation as appropriate. In reviewing your plan, these workers may not be covered under your collective bargaining medical plan. You should, therefore, devise some means to provide employees who qualify under the law with health care benefits pending qualification for coverage in your medical plan.

5. The disputed provisions of the Act have not been construed by the Hawaii Supreme Court or Intermediate Court of Appeals.

ment is preempted by ERISA. However, defendants contend that the amendment was "only a clarification of what was already included in the body of the act from its inception;" therefore, that ERISA's preemption provisions do not apply under the ERISA Amendment. For the reasons stated below, I conclude that the Hawaii Amendment provided for "more than the effective administration" of the Act. Therefore, the amendment's provisions purporting to regulate certain collectively bargained health care plans cannot be enforced under ERISA. 29 U.S.C. § 1144.

## III. THE HAWAII ACT

Defendants contend that collectively bargained prepaid health care plans were regulated by the Hawaii Act as originally enacted; therefore, that the Hawaii Amendment, expressly so providing, merely was intended as a "clarification." However, the plain language of the Act, its 1978 amendment, and its legislative history, as well as the legislative history of the ERISA Amendment, all belie this contention.

■ It is axiomatic that in interpreting a statute, courts first must look to the language of the statute itself. *Olsen v. Government of Mexico,* 729 F.2d 641, 645 (9th Cir.1984); *Shields v. United States,* 698 F.2d 987, 989 (9th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 73, 78 L.Ed.2d 86 (1983). The operative language in § 393–19(a) of the Hawaii Act, as it existed on September 4, 1974, plainly provided that collectively bargained health care plans were not subject to any regulation whatsoever. The Hawaii Amendment added the following emphasized language:

... nothing in this chapter shall be construed to limit the freedom of employees to bargain collectively for different prepaid health care coverage, *if the protec-*

*tion provided by the negotiated plan is more favorable to the employees benefited than the protection provided by this chapter or at least equivalent thereto,* or for a different allocation of the costs thereof.

Haw.Rev.Stat. § 393–19(a) (Supp.1983). This amended language required, for the first time, that collectively bargained health care plans be subject to certain minimum, state-imposed, requirements.

Defendants urge the Court to focus on the "findings and purpose" section of the Act, § 393–2, which, they contend, authorizes state regulation of collectively bargained plans. Although that provision, standing alone, may be susceptible of being read as contemplating that collectively bargained plans were to be regulated, it must be read in context and in conjunction with § 393–19. A general statutory section setting forth legislative policy and purpose neither constitutes an operative section of the statute nor prevails over more specific provisions. *Bissette v. Colonial Mortgage Corp.,* 477 F.2d 1245, 1246 (D.C.Cir.1973); *see also,* 1A C.D. Sands *Statutes and Statutory Construction* (a.k.a. Sutherland, *Statutory Construction* ) § 20.12 (4th ed. 1972) (policy statement of a statute cannot be used to create an ambiguity where the clear language of the statute is readily discernible) (*"Stat.Constr."*). Defendants' reliance on the "findings and purpose" section of the Act is misplaced.[6]

Moreover, the operative language of § 393–19, as originally enacted, is preceded by the words, *"in addition to* the policy stated in section 392–2 ...."* (Emphasis added.) This clause indicates that the Hawaii Legislature contemplated that § 393–19 would state something more than the general policy expressed in § 393–2. Thus, § 393–19 originally provided for a specific

---

**6.** It should also be noted that § 393–2's language is prohibitory and not an affirmative grant of regulatory authority. Its reference to collective bargaining agreements and employer-sponsored plans is limited to "protection already provided" pursuant to such agreements, *i.e.,* the section may be read as limited to agreements and plans in existence at the time the Act became effective

in 1974. The obvious legislative purpose of the provision as thus read would be to insure that the Act would not be interpreted to "diminish any protection" in collectively bargained or employer-sponsored plans, in effect on the date of enactment, which provided greater coverage than required by the Act.

**454**

exception for collectively bargained health care plans from the Act's coverage.[7]

■ The second signpost of statutory construction is the statute's legislative history. *Brothers v. First Leasing*, 724 F.2d 789, 792 (9th Cir.1984); *Green v. Commissioner*, 707 F.2d 404, 405 (9th Cir.1983). Courts have recognized that the report of the legislative committee responsible for drafting a proposed statute is persuasive evidence of legislative intent. *In re Taxes, Hawaiian Land Co.*, 53 Hawaii 45, 60–61 n. 15, 487 P.2d 1070 (1971); *see also International Tel. & Tel. Corp. v. General Tel. & Elec. Corp.*, 518 F.2d 913, 921 (9th Cir. 1975). The joint legislative conference committee responsible for the final draft of Act 210, which was enacted as the Hawaii Act, expressly states:

> The purpose of the bill is to extend prepaid health care insurance to workers who do not have that kind of protection or have only inadequate prepaid health care insurance. The workers who will benefit from the legislation are regular members of the labor force whose employment is *not subject to collective bargaining agreements. The bill is not applicable to union employees* or to public employees.

Conf.Comm.Rep. No. 2–74 on S.B. No. 14, the Hawaii Prepaid Health Care Act, Hawaii Sen.J. at 746 (1974) (emphasis added). That the intent of the Hawaii Legislature in 1974 was to exempt collectively bargained agreements from coverage under the Hawaii Act is further confirmed by that body's later statements in the legislative history of the 1978 amendment to the Act. The Hawaii House and Senate Standing Committee Reports on H.B. 599 both stated:

> Under the present law, employees are free to bargain collectively for different prepaid health care coverage. However, there are no provisions to guarantee that the protection provided by the negotiated plan will be equivalent to or more favorable than the protection provided by the present Prepaid Health Care Law standards.

Standing Comm.Rep. No. 423, Hawaii H.J. at 1483 (1977); Standing Comm.Rep. No. 990, Hawaii Sen.J. at 1175 (1978).

Thus, it is evident that the Legislature considered that collectively bargained health care plans were not covered by the Act, as originally enacted. The purpose of the Hawaii Amendment was to require such plans to meet the statutory equivalency standard. This clearly is a substantive change, enacted for more than the effective administration of the Act, as it existed in 1974.

Defendants also urge that the language added to § 393–19 by the 1978 amendment —"... if the protection provided by the negotiated plan is more favorable to the

---

**7.** Defendants also rely on Haw.Rev.Stat. § 393–13 to support their claim that collectively bargained plans were required to be at least as favorable as the statutory plan from the inception of the Hawaii Act. Section 393–13 provides:

> Unless an applicable collective bargaining agreement specifies differently every employer shall contribute at least one-half of the premium for the coverage required by this chapter and the employee shall contribute the balance; provided that in no case shall the employee contribute more than 1.5 per cent of his wages; and provided that if the amount of the employee's contribution is less than one-half of the premium, the employer shall be liable for the whole remaining portion of the premium.

Defendants contend that under this section, a collectively bargained plan cannot require the employee to contribute more than 1.5 per cent of his wages. However, its plain language, "Unless an applicable collective bargaining agreement specifies differently," clearly exempts collectively bargained plans from § 393–13's coverage. This is consistent with the provision in § 393–19(a), which has always authorized "a different allocation of the costs" of a collectively bargained plan.

Defendants also point to § 393–3(3) (definition of "employer"), and § 393–17(a) ("exemptions of certain employees") in support of their position. Defendants contend that the failure of these sections to exempt employers with collectively bargained health care plans is a further indication of the legislature's intent not to exempt employers such as plaintiff's members. The argument is unpersuasive. It is clear that the legislature merely chose to address the matter of collectively bargained plans in a separate section, § 393–19.

employees benefited than the protection provided by this chapter or at least equivalent thereto"—merely was intended to "clarify" the Act as originally enacted. This contention, however, contravenes a widely accepted rule of statutory interpretation. Construction of a statute which would render some words surplusage is to be avoided. *Pacific Mut. Life Ins. Co. v. American Guar. Life Ins. Co.*, 722 F.2d 1498, 1500 (9th Cir.1984). Put another way, "the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights." 1A *Stat.Constr.* § 22.30. *See also, In re Taxes, Hawaiian Land Co.*, 53 Hawaii at 60–61, 487 P.2d 1070. Given the

legislative history of the 1978 amendment, no reason appears why this rule of construction should not be applied here.

## IV. THE ERISA AMENDMENT

■ Finally, the legislative history of the ERISA Amendment indicates that Congress intended the term "effective administration" to be construed strictly. It is clear that Congress intended to adhere to *Standard Oil*, preempting the Act's drug and alcohol abuse treatment provisions.[8] State officials had lobbied to restore state regulation of prepaid health care plans, and the accommodation reached was that the Hawaii Act would be given effect, but only as to its substantive provisions in effect on September 2, 1974. Any subsequently enacted substantive change would succumb to "the broad scope of ERISA preemption." The ERISA Amendment thus was to "operate only as a narrow exception."[9] Had

---

**8.** As originally reported by the United States Senate, the ERISA Amendment would have exempted the Hawaii Act as it existed on January 1, 1977. The Senate had assumed incorrectly that the drug and alcohol abuse treatment provision of the Hawaii Act, which was the subject of *Standard Oil*, did not become effective until 1977 and thus would continue to be preempted. S.Rep. No. 646, 97th Cong.2d Sess. 18 (1982). However, Senator Matsunaga's amendment to change the exemption date to January 1, 1976, thereby, "freezing" the Hawaii Act as of that date to eliminate the drug and alcohol abuse treatment provision (which was passed by the Hawaii legislature in 1976, not 1977) was adopted by the Senate. *See* 128 Cong.Rec. S13,-154 (daily ed. Oct. 1, 1982) (remarks of Sen. Matsunaga).

The House further amended the exemption date to September 2, 1974. 128 Cong.Rec. H9,606 (daily ed. Dec. 13, 1982) (remarks of Rep. Rostenkowski).

**9.** Rep. Erlenborn fully explained the purpose and intent of the ERISA Amendment:

The agreed amendments to ERISA are corrective in nature. These amendments to ERISA section 514 serve to reaffirm the broad Federal preemption of state laws as they relate to employee benefit plans as was the original intent of ERISA.

The first amendment which adds a new paragraph (5) to ERISA section 514(b) will enable the Hawaii Prepaid Health Care Act (Haw.Rev.Stat. 393–1 through 51) *to be administered in a limited fashion* after the date of enactment of H.R. 5470. Last year the Supreme Court let stand the decision of the Ninth Circuit Court of Appeals in Standard

Oil Company of California against Agsalud that the broad preemptive framework relating to both pension and welfare (for example, health) plans agreed to by the ERISA conferees does in fact supersede the Hawaii statute. The agreement to amend ERISA to permit the future application of the Hawaii law was reached solely on the basis and with the understanding that the Hawaii law is an unusual special case, inasmuch as the law was enacted just prior to the signing of ERISA on September 2, 1974, and that *the law will be permitted to operate only as a narrow exception which is not expected to do violence to the strong Federal preemption scheme.* In agreeing to the Hawaii exception this body will be *reaffirming the broad scope of ERISA preemption and the validity of the interpretation of the Federal courts in connection with the Hawaii statute.* To help allay the fears of those who might otherwise view this action as the beginning of a weakening of Federal preemption under ERISA, the amendment contains an explicit statement that this limited exception shall not be considered a precedent with respect to extending similar treatment to any other State law.

It should be noted that the provision of the Hawaii law which triggered the Standard Oil challenge remains preempted under the new exception. *In fact any amendment to the Hawaii Prepaid Health Care Act enacted after September 2, 1974, is preempted except to the extent such amendment provides only for the effective administration of the law effective as of such date.*
128 Cong.Rec. H9,609–10 (daily ed. Dec. 13, 1982) (remarks of Rep. Erlenborn) (emphasis added).

Congress wished to exempt the Hawaii Act's provision regulating collectively bargained plans, as enacted in the Hawaii Amendment, from ERISA preemption, it could easily have provided that the non-preemption date of the Hawaii Act would be 1978, rather than 1974. The fact that Congress did not so provide indicates that "effective administration" should not be construed to include the substantive change enacted by the Hawaii Legislature in 1978. Such a conclusion comports with the well established doctrine of statutory construction that exceptions contained in a statute are to be strictly construed. *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910–11, 64 L.Ed.2d 548 (1980).

The legislative history makes equally clear that it was Congress' understanding that the Hawaii Act, as enacted in 1974, did not apply to collectively bargained health plans. During hearings before the United States House of Representatives, Robert C. Gilkey, Deputy Director of DLIR, the state agency responsible for the administration of the Hawaii Act, in response to questioning by Representative Erlenborn, stated that the Act did not apply to collectively bargained health care plans.[10] Further, during joint Senate Committee hearings,

Senator Inouye also stated: "Health plans negotiated under collective bargaining agreements are exempt from the Act as it was felt that such negotiated benefits are more liberal than those required under the Act." *ERISA Improvements Act of 1978: Joint Hearings Before the Subcomm. on Labor of the Senate Comm. on Human Resources and the Subcomm. on Private Pension Plans and Employee Fringe Benefits of the Senate Comm. on Finance, on S. 3017,* 95th Cong.2d Sess. 203 (1978).

In light of these statements (and none to the contrary), Congress could not, conceivably, have intended the ERISA Amendment to permit Hawaii to regulate collectively bargained health plans. The amendment's "narrow exception" must be construed in this light. "In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Congress did not so intend and the ERISA Amendment's "effective administration" exception does not exempt the Hawaii Amendment from ERISA preemption.

## CONCLUSION

For the foregoing reasons, I hold that the 1978 amendment to the Hawaii Prepaid

---

**10.** *Mr. Gilkey:* Our law as originally enacted did not intrude upon the statutory provision. *Our prepaid health law did not pertain to collective bargaining.*
*Mr. Erlenborn:* If there was a collectively bargained contract which did not include health benefits, the law would not require health benefits to be included in the contract?
*Mr. Gilkey: That is correct.*
*Mr. Erlenbron: So you have an exemption for the union situation* where they can decide not to provide health benefits at all?
*Mr. Gilkey: Yes,* there was some discussion as to this earlier. If the unions have the clout to go in and negotiate for their members they should.
*The concern of our legislature* and our State, I think, *was primarily for those who* had no coverage at all, *were not unionized,* and had no one to speak for them.
*Oversight on ERISA, 1978, Hearings Before the Subcomm. on Labor Standards of the House Comm. on Education and Labor on Pub.L. 93–406,* 95th Cong.2d Sess. 596 (1978) (emphasis added).

The contradiction between Deputy Director Gilkey's testimony and the later opinion of the Hawaii Attorney General remains unexplained. The Court is not unmindful of the principle that interpretations of a statute by the agency charged with its administration is entitled to great deference by reviewing courts. *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Brothers v. First Leasing,* 724 F.2d at 792. However, in light of the contradictory positions taken by the State of Hawaii, I conclude that there is no authoritative, administrative interpretation of the Hawaii Act. Moreover, in the final analysis, the opinion of the Hawaii Attorney General is as much an interpretation of the "effective administration" provision of the ERISA Amendment, as it is of the Hawaii Amendment. The Secretary of Labor, the federal agency charged with administering ERISA, has taken no position on the meaning of § 1144(b)(5)(B)(ii)'s "effective administration" provision in the context of this litigation.

Health Care Act of 1974, purporting to regulate collectively bargained health care plans, Haw.Rev.Stat. § 393–19(a) (Supp. 1983), does not come within the narrow exception provided by the 1983 amendment to ERISA. 29 U.S.C. § 1144(b)(5)(A) & (B)(ii). Therefore, the 1978 amendment to the Hawaii Act must fall under ERISA's broad preemption provision, 29 U.S.C. § 1144(a), by virtue of the Supremacy Clause, Const. art. VI § 2.[11]

IT IS ORDERED that plaintiff's motion for summary judgment is granted and a declaratory judgment and permanent injunction in plaintiff's favor shall be entered accordingly.

---

**11.** Federal preemption of state regulation of collectively bargained health care plans is also in keeping with a long line of cases which preclude state interference with labor management negotiations. *See, e.g., Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). As the Supreme Court recently stated in the analogous context of collectively bargained pension plans:

Where, as here, the pension plans emerge from collective bargaining, the additional federal interest in precluding state interference with labor-management negotiations calls for pre-emption of state efforts to regulate pension terms. As a subject of collective bargaining, pension terms themselves become expressions of federal law, requiring preemption of intrusive state law.

*Alessi,* 451 U.S. at 525–26, 101 S.Ct. at 1907–08 (citations and footnotes omitted). Nothing in the legislative history of the ERISA Amendment is persuasive of any intent by Congress to abandon this long-held tenet with respect to collectively bargained health care plans in Hawaii.