**UNOCAL CORPORATION, Plaintiff,**

**v.**

**T. Boone PICKENS, Jr., Jack E. Brown, Cyril Wagner, Jr., Wagner & Brown, Mesa Petroleum Co., Mesa Southern Co., Mesa Asset Co., CY–41, Inc., Jack–41, Inc., Mesa Partners II, Defendants.**

**MESA PARTNERS II, Counterclaimant,**

**v.**

**UNOCAL CORPORATION, Counterdefendant.**

**No. CV 85–2179 AWT.**

United States District Court, C.D. California.

May 1, 1985.

Walter L. Stratton, James R. Martin, Gibson, Dunn & Crutcher, Los Angeles, Cal., James Robertson, Juanita A. Crowley, Wilmer, Cutler & Pickering, Washington, D.C., George C. Bond, Jasmina A. Theodore, Dennis P. Codon, Orville A. Armstrong, P.C., Brian G. Gough, Darlene E. Rabe, MacDonald, Halsted & Laybourne, Los Angeles, Cal., for Unocal Corp.

Michael H. Diamond, Elizabeth D. Mann, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, Cal., Philip J. John, Michael Paul Graham, James Edward Maloney, Baker & Botts, Houston, Tex., for Mesa Partners II.

## MEMORANDUM ORDER DENYING PRELIMINARY INJUNCTION

TASHIMA, District Judge.

### BACKGROUND

This is the motion of defendant and counterclaimant Mesa Partners II ("Mesa II") for a preliminary injunction to enjoin plaintiff and counterdefendant Unocal Corporation ("Unocal") from completing its self

**1082**

tender offer (the "Offer") unless a challenged condition to the Offer is removed.

The Offer was announced on April 17, 1985 and is to exchange senior secured notes (of varying yields and maturities) of the issuer, Unocal, of principal amounts totalling $72.00 for each share of Unocal common, for up to 87.2 million shares (just under 50%). The Offer was a part of Unocal's response to Mesa II's cash tender offer, announced on April 8, 1985, for 64 million shares of Unocal common at $54.00 per share. The Offer was conditioned on acceptance for payment by Mesa II of 64 million shares of Unocal common pursuant to the Mesa II cash tender offer. The 64 million shares, together with the shares owned by Mesa II and its affiliates, would give Mesa II 51 percent of Unocal common. On April 23, 1985, Unocal amended the Offer with respect to 50 million of the 87.2 million shares tendered for by waiving the condition that Mesa II successfully complete its cash tender offer. One of the conditions of the Offer (and not affected by the amendment) is that no shares which are tendered by or on behalf of Mesa II or its affiliates would be accepted for exchange. It is this condition which is put in issue by this motion.

## ISSUE

Mesa II contends that this provision of the Offer violates both § 13(e) and § 14(e) of the Securities Exchange Act of 1934, as amended by the Williams Act (the "Williams Act"), 15 U.S.C. §§ 78m(e) & 78n(e). The issue raised is whether the Williams Act prohibits discriminatory tender offers, *i.e.*, offers to less than all persons who hold the class of securities which are the subject of the offer. Of course, that issue must be determined in the context of this case where the only excluded owner of Unocal common is the competing, hostile tenderor. The issue is one of first impression—apparently, there is no reported case dealing with this issue.

## DISCUSSION

Accepted rules of statutory construction require first that we examine the language of the statute itself—to determine whether the plain words of the statute support the meaning ascribed to it. *See, e.g., Council of Hawaii Hotels v. Agsalud,* 594 F.Supp. 449, 453 (D.Hawaii 1984). Here, nothing in the text of either § 13(e) or § 14(e) of the Williams Act (or in any other provision of the Act) plainly supports counterclaimant's contention. Although we may look to the legislative history of the Williams Act to interpret an ambiguous statutory provision, *see id.* at 454 even assuming that §§ 13(e) and 14(e) are susceptible of the claimed reading, nothing in the legislative history supports counterclaimant's implicitly sweeping reading of the Act. *See, e.g., Piper v. Chris-Craft Indus., Inc.,* 430 U.S. 1, 30–31, 97 S.Ct. 926, 943–944, 51 L.Ed.2d 124 (1977); *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975).

Mesa II relies primarily on the failure of the Securities and Exchange Commission ("SEC") to act, as support for its reading of the Act. The SEC has twice initiated proposed rulemakings which, if the rules had been adopted, would have required tender offers to be "open to all." SEC Release No. 34–16385, 44 Fed.Reg. 70,349, 70,355 (1979) (proposed Rule 14e–4); SEC Release No. 34–14234, 42 Fed.Reg. 63,066 (1977) (proposed Rule 13e–4). It is more reasonable to infer, however, that the SEC's failure to adopt such proposed rules (and its apparent failure to litigate the issue in court) is more likely based on either a view that such substantive rules are not authorized by the Act or that, if they are, as a matter of policy the SEC has chosen not to require such an "open to all" condition.

In the face of consistent judicial acceptance from the beginning of the Williams Act that Congress never intended to substantively regulate tender offers and in the face of the SEC's apparent acceptance of that interpretation, it is unnecessary to debate the cases which are claimed tangentially to touch on this issue. Suffice it to state that the only case to impart substan-

tive content to the Williams Act, *Mobil Corp. v. Marathon Oil Co.*, 669 F.2d 366 (6th Cir.1981), *cert. denied*, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982), has been universally criticized by every circuit to consider the issue. *See, e.g., Feldbaum v. Avon Prod., Inc.*, 741 F.2d 234, 237 (8th Cir.1984), and cases cited therein.

I note also that this case confirms the ability of state courts to deal with substantive issues of corporation law and corporate governance, including issues of the fairness in a corporation's treatment of its shareholders. In a parallel state court proceeding, *Mesa Petroleum Co. v. Unocal Corp.*, C.A. No. 7997 (Del.Ch. Apr. 29, 1985), the Delaware Chancery Court issued a temporary restraining order ("TRO") restraining Unocal from "proceeding" with the Offer, unless Mesa II is permitted to participate in it (*i.e.*, tender its shares) "in the same manner as all other Unocal shareholders." The TRO was issued on the finding that Unocal was unlikely to prevail "on the issue of the overall fairness of the offers' exclusion of Mesa."

Finally, I find that Mesa II has failed to make the essential showing that it will suffer irreparable harm. *Rondeau*, 422 U.S. at 61, 95 S.Ct. at 2077; *Pacific Realty Trust v. APC Inv., Inc.*, 685 F.2d 1083, 1086 n. 5 (9th Cir.1982). It is clear that any loss of premium is both calculable and monetarily compensable, should Mesa II prevail on the merits. Mesa II's papers on its motion is devoid of any showing of irreparable harm. When questioned at the hearing, counsel's response was that the mix of outstanding shares would be affected by the Offer; however, he was unable to articulate how a change in that mix from the Offer going forward could irreparably harm Mesa II. I also cannot accept the Delaware Chancery Court's reasoning that irreparable harm (which it found for purposes of issuing its TRO) has been shown for Williams Act purposes. Its "finding" on this issue was:

> However, the Unocal exchange offer cannot be viewed in isolation. As discussed above, one of the purposes of the Offer

and the Mesa exclusion is to defeat Mesa's takeover bid. Given that purpose, it seems somewhat inconsistent to argue that the only harm to Mesa will be monetary. If Mesa is prevented from acquiring Unocal in part because of an unlawful exchange offer, it will have been deprived of a unique opportunity the loss of which is not adequately compensable in money damages.

*Mesa Petroleum Co. v. Unocal Corp.*, slip op. at 8.

With respect, I fail to see how this amounts to a showing of irreparable harm. Even assuming that Unocal's purpose in making the Offer is to frustrate Mesa II's takeover bid, not a single fact (other than the purpose itself) is set forth from which irreparable harm could be inferred. And while it is equally true that *if* Mesa is prevented from completing its acquisition of Unocal, it will have been deprived of an unique opportunity, again, there is not a single fact stated or found from which it can be inferred that the Offer will or may have that effect. The most that can be inferred is that the Offer, if completed, will reduce the value of the acquired company. Mesa II has made no argument that it has a legally protectible right to acquire Unocal at any stated value. Although the prize may be reduced in value by completion of the Offer, it can be argued that rather than preventing acquisition by Mesa II, Mesa II's acquisition efforts will be aided, since its 13.6 percent share of Unocal common will increase to 19 percent of shares outstanding after exchange of approximately 30 percent of the now outstanding non-Mesa II shares for debt securities. In short, I cannot agree that any basis exists upon which a finding of irreparable harm can be predicated.

For the foregoing reasons, which constitute my findings of fact and conclusions of law under F.R.Civ.P. 52(a), the motion of defendant and counterclaimant Mesa II for a preliminary injunction is denied.