SEARS, ROEBUCK & CO. EMPLOYEES' SAVINGS & PROFIT-SHARING PENSION FUND v. COMMISSIONER OF INTERNAL REVENUE.

No. 4352.

Circuit Court of Appeals, Seventh Circuit.
Dec. 20, 1930.

Charles Lederer, of Chicago, Ill., and Robert N. Miller and Ward Loveless, both of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and Helen R. Carloss, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before ALSCHULER and PAGE, Circuit Judges, and LINDLEY, District Judge.

PAGE, Circuit Judge.

This is a petition for review of the decision of the Board of Tax Appeals, confirming respondent's assessment against petitioner for income taxes for the years 1917, 1918, 1919, and 1920.

The taxes were assessed on the theory that petitioner is a trust, taxable under the provisions of section 2(b) of the Revenue Act of 1916 (39 Stat. p. 757) and section 219 of the Act of 1918 (40 Stat. p. 1071), and not an association within the provisions of section 10 of the Act of 1916 (39 Stat. p. 765).

The resolution and plan, set out in the margin,[1] show the facts.

The government's argument that petitioner is not an association is based upon the assumptions: (a) That it was not engaged in business; and (b) that it did not perform its functions under a mode of procedure similar to that of a corporation.

Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, is cited by the government as authority for the proposition that the doing of business in a quasi corporate form is the ultimate test of an association. No such test is laid down in that case. On the contrary, the court said, after pointing out many definitions of the word "association" (page 157 of 265 U. S., 44 S. Ct. 462, 467): "We think that the word 'association' as used in the Act clearly includes 'Massachusetts Trusts' such as those herein involved. * * *

---

[1] Resolved, That the plan of employees' saving and profit sharing fund, as set forth in the announcement dated July 1, 1916, signed by Julius Rosenwald, as president, and Albert H. Loeb, as vice-president, be, and the same is hereby in all respects confirmed, ratified and approved, and the officers of the company are hereby expressly authorized to credit to such fund the share of the profits of the company, as in said plan specified from time to time, and in general to carry into effect the terms and provisions of said plan.

Resolved Further, That Julius Rosenwald, Albert H. Loeb, O. C. Doering, John H. Mullen, and Mrs. A. Rudd Brooker, are hereby selected and elected as the trustees of the Sears, Roebuck and Co.'s Employees' Saving and Profit Sharing Fund, to hold office as such trustees until further action of the Board, and subject to removal at any time by further action.

The plan mentioned in and adopted by said resolution, is as follows:

#### Plan.
#### Article I.
#### Purpose.

In order that employees may share in the profits of this business, and to encourage the habit of saving, the Company has decided to contribute annually a sum equal to five per cent. of its net earnings (without deduction of dividends to stockholders), as shown by the annual audit of its books, to the fund known as Sears, Roebuck & Co.'s Employees' Savings and Profit Sharing Pension Fund.

It is intended that this plan shall furnish to those who remain in the employ of the Company until they reach the age when they retire from active service, a sum sufficient to provide for them thereafter, and that even those who achieve a long service record, but who may not remain with the Company all of their business life, will have accumulated a substantial sum. This Savings and Profit Sharing Pension Fund will enable an employee to secure an income for himself after the close of his active business career or, in case of his death, for his family.

#### Article II.
#### Eligibility.

Sec. 1. Participation will be entirely voluntary.

Sec. 2. Every employee of Sears, Roebuck & Co., regardless of position, will, after three years of service, be eligible to participate in this fund, so long as he remains an employee.

#### Article III.
#### Contributions to the Fund.

Sec. 1. An employee in order to participate must deposit in the fund five per cent. of his salary.

The Company will contribute a sum equal to five per cent. of its net earnings (without deduction for dividends paid stockholders) as shown by the annual audit of its books.

Sec. 2. No employee may deposit more than five per cent. of his salary, and in no case more than than $150 per annum; this limit being deemed advisable so that the higher salaried employees may not too largely participate in the fund.

#### Article IV.
#### Participation in the Profits.

Sec. 1. The contributions of the Company will be made annually as soon after the first of each year as an audit of the books will permit, and will be credited pro rata to participating employees in the proportion which the amount deposited by each employee during the preceding year for which the Company has contributed bears to the total amount deposited by all employees during such year.

#### Article V.
#### Withdrawals.

Sec. 1. A depositor who has completed ten years of service will be entitled to withdraw all money and securities credited to his account, including the Company's contributions, as hereinafter provided.

Sec. 2. A depositor who has not completed ten years of service will be entitled to withdraw only the amount he has deposited in cash, plus interest at five per cent. per annum, compounded semi-annually, and no more; except in the case of a woman depositor who, after five years' service leaves to become married, in which case she will be entitled to her full share in the fund in money and securities credited to her account, including the portion contributed by the Company; and except in the case of the death of a depositor while in the service of the Company, in which case his estate, or such beneficiaries as he may designate, will be entitled to the full amount credited, in money and securities, including the contributions of the Company, as hereinafter provided.

Sec. 3. A depositor shall withdraw upon ceasing to be an employee of the Company, or upon failing to regularly make his deposit.

Sec. 4. A depositor who once withdraws cannot re-enter the fund.

Sec. 5. In any case of withdrawals where a depositor is entitled to share in the contributions of the Company, he will receive either (a) the full amount of his credit, as shown by the accounting for the preceding year, plus interest at the rate of five per cent. per annum, and plus such sums as the depositor may have deposited since December 31st of the preceding year, with interest at five per cent. per annum, or (b) his full pro rata share

What other form of 'associations,' if any, it includes, we need not, and do not, determine."

In Flint v. Stone Tracy Co., 220 U. S. 107, page 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, the court said: "'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing People v. Commissioners of Taxes, 23 N. Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' 1 Bouvier's Law Dict. p. 273."

The plan, above set out, was presented by Sears, Roebuck & Co. (called company) to its employees in 1916, and under it were brought together, as necessary parties to carry it out: (1) the company; (2) every employee in service three years who elected to contribute to the fund; and (3) five trustees, to administer the affairs of the fund. The company's active connection consisted in the selection of the trustees and the annual contribution of a sum of money, as provided in the agreement. The active participation of the employees consisted in the signing of the applications accepting the plan; contributions by each participating employee of 5 per cent. of his wages; and voting upon proposed changes in the plan. The trustees had the management of the fund, and were empowered, subject to the approval of the depositors, to amend the plan, and had the right to adopt rules to carry out its purposes. The company, the trustees, and the employees were necessarily associated together to establish and carry out the plan, and, so long as the fund continues, they must continue to be so associated.

The purpose of the plan is twofold: (1) To put the employees in position to share in the profits of the business of the company; and (2) to encourage habits of saving among the large number of employees, to the end (a) that those who remain with the company

until the retiring age may have a competency; and (b) that those who do not remain until the retiring age may accumulate a substantial sum.

The things necessary to be done after the parties were brought into the association were numerous. The contributions of each had to be determined. An account had to be opened and kept with each contributor. As employees were continually dropping out, their rights had to be ascertained and provisions for settlement made. A loan business with the depositing employees was a part of the plan. While the plan expresses the intention to invest the fund in company, shares, so far as practicable, yet there might be other investments determined upon by the trustees. However invested, the investment of the fund was not merely a matter of a clerk writing or telephoning to a broker to buy a desired number of shares, but what, how much, and when to buy were things that had to be determined, not as a matter of guesswork, but by those who understood market conditions, the company's business conditions, and who had an intelligent view of the business future. After those important matters were determined, or as one of the factors in their determination, the means for paying for the purchases had to be found. The record shows that there were dividends of $600,000 in the four years in question, that grew out of a plan started in 1916 without a dollar. In the years in question, $70,000 in interest was paid. All these things were done, and, under the plan, many more could have been and probably were done in those years.

In dealing with the question as to whether the fund performed its functions under a mode of procedure similar to that of a corporation, respondent suggests, as important, that no shares of stock or certificates of in-

---

of the securities and uninvested moneys of the fund, at the option of the Trustees.

Sec. 6. Loans will be made to depositors in cases of actual necessity and when in the opinion of the Trustees the circumstances warrant it.

### Article VI.
#### Management.

Sec. 1. The fund will be handled, entrusted, and invested under the direction of a Board of five Trustees, to be selected by the Board of Directors of the Company, three to be officers or directors and two employees (not officers or directors), of Sears, Roebuck and Co.

Sec. 2. It is intended that so far as practicable and advisable the fund will be invested in shares of stock of Sears, Roebuck and Co. to the end that the depositor may, in the largest measure possible, share in the earnings of the Company.

Sec. 3. The Board of Trustees may, from time to

time, adopt rules to carry out the purposes of this plan, and may adopt amendments to the plan; but no change shall be made in the plan as above entitled unless the same is ratified by the vote of a majority of the depositors. All questions of interpretation of this plan, or amendments thereto, or the rules pertaining thereto or relating to any matter of accounting, values, profits, or any other matters or differences which may arise shall be determined solely by the Board of Trustees, and the decision of the Board shall be final and conclusive upon all concerned.

### Article VII.
#### Discontinuance.

Sec. 1. The fund may be discontinued at any time by announcement of the Company, made at least six months before its final yearly contribution. After such announcement no new depositors will be eligible to join, and upon the payment into the fund of such final contribution, the fund shall be distributed among all the depositors pro rata in proportion to their interests as ascertained by the Board of Trustees.

terest were issued. There are many kinds of corporations, some for, and others not for, pecuniary profit, insurance companies, religious corporations, etc. Some do not have stock or other certificates of interest. In some, the certificate is evidence of the number of shares owned and paid for; in others, such as loan and homestead associations in Illinois, the certificate is evidence of the number of shares to be paid for. In incorporated clubs and religious organizations there are usually not issued any certificates or other evidence of membership. In loan associations, under Illinois laws, the member's interest is not shown by his certificate, but is shown upon the books of the association where payments, earnings, fines, etc., are credited to each member, which is very much like what was done by this fund in keeping accounts with its contributors.

There are certain basic things that enter into the formation of all corporations: (1) A charter; (2) by-laws or rules; (3) members, who associate themselves together; (4) a governing board. In this fund, the plan was its charter. The right given the trustees to, "from time to time, adopt rules to carry out the purposes of this plan," was the right to make by-laws. The right given boards of directors is nothing more than the right to make governing rules. Whether in this case the trustees adopted rules does not appear, but there were many acts to be done that naturally would call for a presiding officer, a secretary, and a treasurer. The employees, by the plan, were given the right to approve or disapprove amendments to the plan, but their rights were carefully defined in the plan, and their participation therein was wholly optional with every individual, and they might approve the plan and go in, or disapprove it and stay out. If they had not approved the plan, it would never have become operative. Two of the trustees are always taken from the employees, who are not directors or officers of the company. Whether those trustees chosen from the officers and directors are contributors does not appear, but it seems probable that they are. If so, the contributors are in almost absolute control. However that may be, in the conduct of its affairs, the general practice is that followed by corporations.

The plan here involved did not give money upon which the trustees were to collect the interest and distribute it to named beneficiaries. There was no fund at the start but only a promise by the company to contribute what might be much or little on condition that the employees would contribute a fixed percent-

age of their earnings. The plan did not contemplate putting those contributions on deposit or even at interest, but it was intended that company stock should be purchased or other investments made. A study of all the purposes of the plan discloses that its objects have been and can only be gained through the use of much skill, ability, and sound business judgment.

We are of opinion that the fund should not have been taxed as a strict trust, but that it was an association and taxable as such.

The order is reversed.