**FIRST NATIONAL BANK OF BLUE IS-LAND EMPLOYEE STOCK OWNERSHIP PLAN, Petitioner,**

v.

**The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.**

**No. 85–2615.**

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1986.

Decided Oct. 1, 1986.

Edward J. Karlin, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for petitioner.

Kevin Handly, Federal Reserve Bd., Washington, D.C., for respondent.

Before CUMMINGS and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

The issue in this case is whether an employee stock ownership plan is a "company" for purposes of the Bank Holding Company Act (BHCA), 12 U.S.C. § 1841(a). Because we conclude that an ESOP is a "business trust" or "similar organization," the decision of the Board of Governors of the Federal Reserve System is affirmed.

Statement of the Case

The First National Bank of Blue Island Employee Stock Ownership Plan (ESOP or Plan) asks this Court to review a decision of the Board of Governors of the Federal Reserve System (Board) denying its application to become a bank holding company under 12 U.S.C. § 1841. The ESOP was organized to provide deferred compensation to employees of the First National Bank of Blue Island (Blue Island Bank) and the Community Bank of Homewood-Flossmoor (Community Bank). The ESOP is located and has its principal place of business in Blue Island, Illinois. As described in the Board's order of August 22, 1985, an ESOP is in general:

> an employee compensation and benefit program established and maintained by an employer corporation, that distributes benefits to the company's employees primarily in the form of stock of the employee corporation (or the cash value of the stock). An ESOP includes an underlying trust designed to invest primarily in the shares of the employer corporation. A trustee is designated by the employer to administer the plan according to the trust agreement. A leveraged ESOP is one in which debt is incurred to acquire the employer's shares for the ESOP; the trust's debt is to be repaid from subsequent employer contribution to the ESOP. (August 22, 1985 Order of the Board of Governors of the Federal Reserve System at p. 2, reprinted in Board's Appendix "A")

On May 3, 1985, the ESOP filed its application with the Board for approval of its plan to acquire 54.1% of the voting shares of Great Lakes Financial Resources (GLFR), the parent and holding company of both Blue Island Bank and Community Bank. In its application, however, the ESOP argued that it was not subject to regulation under the BHCA because it was not a company within the meaning of the Act.

On August 22, 1985, the Board denied the ESOP application, holding that because the ESOP was established for a business purpose it qualified as a business trust or similar organization. Thus it was a "company" within the definition of 12 U.S.C. § 1841(b), *infra*, and therefore subject to the requirements of the BHCA. The two dissenters[1] disagreed, reasoning that the ESOP was not organized to operate a business, but to conserve and invest shares of GLFR for later distribution to the subsidiary banks' employees. This function, according to the dissent, was more analogous to a usual personal trust than to a business trust. On September 23, 1985, the petition for review was filed. The sole issue on appeal is whether the ESOP is a company within the meaning of 12 U.S.C. § 1841(a). We agree with the Board that the ESOP has a sufficient business function to be a business trust or similar organization and therefore affirm.

Discussion

A. Standard of Review

The Board's interpretation of the BHCA, if consistent with its language and purpose, is entitled to "the greatest deference." *Securities Industry Ass'n v. Board of Governors*, 468 U.S. 207, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (quoting *Board of Governors v. Investment Co. Institute*, 450 U.S. 46, 56, 101 S.Ct. 973, 981, 67 L.Ed.2d 36). Courts are to defer to the Board's construction of terms because Congress designated it to administer the Act and because of its expertise in administration of the banking laws. See *Securities Industry Ass'n*, 104 S.Ct. at 3009; *Whitney Nat'l Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420–421, 85 S.Ct. 551, 557, 13 L.Ed.2d 386; *Huston v. Board of Governors*, 758 F.2d 275, 282 (8th Cir.1985). In addition, Section 9 of the BHCA provides that "the findings of the Board as to the facts, if supported by substantial evidence, shall be conclusive." 12 U.S.C. § 1848; see *Board of Governors v. First Lincolnwood Corp.*, 439 U.S. at 253, 99 S.Ct. at 515.

---

**1.** The dissenters were Vice Chairman Martin and Governor Seger.

## B. Bank Holding Company Act

The Bank Holding Company Act, 12 U.S.C. §§ 1841–1850, is a comprehensive federal statutory scheme designed to regulate bank holding companies.[2] The BHCA requires Board approval before a "company" takes any action to become a bank holding company. 12 U.S.C. § 1842. Section 1842 sets out minimal financial requirements that must be satisfied before becoming a bank holding company.

The BHCA defines "company" as:

any corporation, partnership, business trust, association, or similar organization, or any trust unless by its terms it must terminate within twenty-five years or not later than twenty-one years and ten months after the death of individuals living on the effective date of the trust....

12 U.S.C. § 1841(b). The issue here is whether the ESOP is a "corporation, partnership, business trust, association, or similar organization." An analysis of the language, legislative history, and purpose of the Act, as well as the structure, organization, and purpose of ESOPs, is necessary to decide whether an ESOP fits within the quoted definition.

### 1. ESOPs

Employee Stock Ownership Plans (ESOPs) are a form of statutory pension programs designed to invest employee retirement assets in the stock of the employer. See Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93–406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001–1461). The goal of the ESOP program is to broaden ownership of capital. The ESOP program provides a form of deferred compensation and retirement benefits created to encourage increased employee ownership. Leveraged ESOPs are authorized to borrow money in order to finance the stock purchase. See 29 U.S.C. § 1108(b)(3). Leveraged ESOPs are a useful "technique of corporate fi-

nance." 129 Cong.Rec. 51,629, 51,636 (daily ed. Nov. 17, 1983) (statement of Senator Long). Because of enormous tax advantages, corporations are encouraged to establish ESOPs and then use the program to borrow money for capital improvements and other corporate investments.

Through leverage potential, Congress has transformed the ESOP from a simple retirement account into a corporate financing tool. Note, *The False Promise of Worker Capitalism: Congress and the Leveraged Employee Stock Ownership Plan*, 95 Yale L.J. 148, 154 (1985). In fact the legislative history of the ESOP program discloses Congressional intent to promote ESOPs as a suitable device for a broad range of corporate activity. See Note, 95 Yale L.J. at 154 & n. 24. This corporate finance emphasis separates ESOPs from the traditional ERISA retirement plans and their concern for protecting retirement assets. *Id.* It is with this goal and function in mind that the ESOP's relationship to the BHCA must be considered.

### 2. BHCA

The purpose of the BHCA, in addition to diluting the concentration of banking resources and separating banking from unrelated businesses, was to ensure the financial soundness of the banking system by regulating holding companies and their subsidiaries. *Board of Governors v. First Lincolnwood Corp.*, 439 U.S. 234, 247 n. 12, 99 S.Ct. 505, 512 n. 12, 58 L.Ed.2d 484; *Department of Banking and Finance v. Board of Governors*, 760 F.2d 1135 (11th Cir.1985). Under the BHCA Congress requires that companies seeking to acquire banks comply with minimum standards of capital adequacy set by the Board. *First Lincolnwood Corp.*, 439 U.S. at 250, 99 S.Ct. at 514.

The BHCA's definition of company ("corporation, partnership, business trust, association, or similar organization") is expansive. The range of organizational struc-

---

**2.** The BHCA defines a "bank holding company" as any "company which has control over any bank or over a company that is or becomes a bank holding company by virtue of this Chapter." 12 U.S.C. § 1841(a)(1).

tures is broad, excluding only federally or state-owned corporations, individuals, and non-business trusts that do not violate the rule against perpetuities. Not only is there a broad range of specific organizations, the Act's definition of company also includes "or similar organization." The use of this general term is indicative of Congress' intent to include all business-related organizations, excluding all but individuals and the usual personal trusts. Therefore, any formalized structure through which individual economic interests are combined for common business objectives comes under BHCA's definition of "company" and is to be regulated by the Board.

The legislative history of the current BHCA reflects two major changes in the "company" definition that support a broad interpretation. In 1966, the Act was amended to exclude non-business trusts that did not violate the rule against perpetuities. Act of July 1, 1966, Pub.L. No. 89–485, § 2(b), 80 Stat. 236. The amendment continued to exempt short-term personal trusts, but included other trusts and religious and charitable institutions. 1966 U.S.Code Cong. & Ad.News 2385, 2387. Congress viewed nonbusiness trusts as an alternative form of individual ownership, as long as they ceased upon the death of the principal beneficiary. The 1966 amendments were designed to extend coverage to personal testamentary and charitable trusts that functioned in effect like corporations. See, e.g., 112 Cong.Rec. 11,796–11,798 (1966) (remarks of Senator Douglas). Congress' main concern was on long-term continuous control over bank shares of assets. S.Rep. No. 1095, 84th Cong., 1st Sess. 6–7 (1955), reprinted in 1956 U.S. Code Cong. & Ad.News 2482, 2488.

Partnerships were expressly excluded in the original 1956 Act, Pub.L. No. 84–511, § 2(b), 70 Stat. 133 (codified as amended 12 U.S.C. § 1841(b)). Amendments in 1970 brought partnerships within the scope of the BHCA Act of December 31, 1970, Pub.L. No. 91–607, § 101(b)(3), 84 Stat. 1762. The change was made because Congress recognized that partnerships, particularly limited partnerships, were very similar in form to corporations. Thus individuals could use the structure of partnerships to circumvent Congressional intent in regulating bank holding companies. H.R.Rep. No. 91–387, 91st Cong., 1st Sess. 22 (1969).

The 1966 and 1970 amendments were aimed at narrowing the field of entities that fell outside of BHCA regulation. Congress had expressed concern with entities subverting its regulatory framework. Both amendments, their legislative history, and the widening scope of organizations covered demonstrate an intent to bring all business and business-related organizations under the BHCA. The language of the statute, then, must be interpreted to effectuate the purpose and intent of Congress.

Conclusion

Finally, the Plan must be examined in light of the language, purpose, and legislative history of the BHCA. Although ESOPs may not fit squarely within the traditional definitions of "business trusts" or "associations," they are clearly business-related. See Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Sears Roebuck & Co. Employee Savings and Profit-Sharing Pension Fund v. Commissioner, 45 F.2d 506 (7th Cir.1930). The major purpose of the ESOP program was to shift capital ownership from a few owners to a broad base of workers. The method chosen by Congress was to make ESOPs a tool of corporate finance; leveraged ESOPs, especially, are used to finance corporate growth, resulting in stock being held by the employees. It is this aspect of the ESOP program that demonstrates its business nature. ESOPs are not merely trusts holding and conserving assets for the employees, as petitioner contends, but business tools used by management to finance new acquisitions and investments, and for protective employee buyouts. See generally Note, 95 Yale L.J. 148.

Additionally the functions of ESOPs are business-related. ESOPs, like other retirement plans, provide for deferred compensation. ESOPs are established by management, and typically administered by

management, as a method of distributing benefits to the companies' employees in the form of stock. The underlying trust invests the employer contributions primarily in the employer's stock. Thus the ESOP is closely related to the business in which it is established. It provides a deferred compensation plan and investment program for employees, as well as an attractive method of financing for employers.

Petitioner contends that the trust was established to conserve and invest assets for later distribution to employees, not to operate and manage a business. Therefore, petitioner argues, it is more like the usual personal trust than a business trust. The Plan cites *Morrissey v. Commissioner*, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, as support for this position because *Morrissey* requires that to be a business trust it must "provide a medium for the conduct of a business and sharing its gains." *Id.* at 357, 56 S.Ct. at 295; see also *Bogert, The Law of Trust and Trustees* § 247, at 147 (2d ed. 1977) (business trust is organized as a device for profit-making).

Petitioner has grasped too slender a reed. Determining that the ESOP was not formed solely to operate a business does not end the inquiry. To effectuate Congress' intent under the BHCA, it must be decided whether the ESOP is more like a business-type trust or a personal, individual trust. In light of Congressional intent that only purely personal trusts are to escape coverage, the balance of evidence weighs heavily in favor of treating the Plan like a business trust or similar organization.

The organization, structure, and function of the ESOP are more closely analogous to a business trust. The settlor and beneficiary are for all practical purposes identical because, although the employer makes contributions and the employees receive the benefits, the program is deferred compensation; thus the contributions are merely part of the income earned by the employee. The structure of the ESOP is like a corpo-

ration; it includes centralized management, the introduction of new participants without affecting the continuity of the Plan, continuity of life, limitation of participants liability, and a large number of participants. And its function is to provide a service to the corporation as part of a benefits program to attract and maintain workers as well as a tool to finance all sorts of corporate activity. Because these functions are inherently business-related, the Board's holding that the ESOP is a "business trust" or "similar organization" for purposes of the BHCA is permissible.[3]

For the reasons discussed above, the decision of the Board of Governors is affirmed.

---

3. The Plan appeals only from the Board's determination that it was a company and therefore subject to regulation under the BHCA. There-fore, this opinion does not address the Board's conclusion that the Plan did not meet the minimum requirements of 12 U.S.C. § 1842.