**D & G ENTERPRISES, et al., Plaintiffs,**

**v.**

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.**

**No. 82 C 6993.**

United States District Court, N.D. Illinois, E.D.

April 13, 1983.

---

James E. O'Halloran, Jr., O'Halloran, Lively & Walker, Northbrook, Ill., Coghill & Goodspeed, Denver, Colo., for plaintiffs.

Gerald D. Mindell, Arthur F. Radke and Paul K. Vickrey, Law Dept. Continental Bank, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge: [*]

Plaintiffs, multiple investors [1] in eight entities identified as the Longhorn Partnerships,[2] brought this action against Continental Illinois National Bank & Trust Company of Chicago ("Continental") alleging securities fraud under Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2); Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b); and pendent state law claims under 15 Okla.Stat. §§ 101 and 408(b); 76 Okla.Stat. §§ 2 *et seq.;* and common law.[3]

Presently before the Court is Continental's motion to dismiss the complaint pursuant to Fed.R.Civ.P. Rules 9(b) and 12(b)(6). Alternatively, Continental moves to strike certain portions of the complaint pursuant to Fed.R.Civ.P. 12(f). Continental also asserts that in Count I plaintiff fails to plead compliance with the statute of limitations and the tender requirement of § 12(2) of the Securities Act, 15 U.S.C. § 77*l*; that

---

[*] Pursuant to Rule 9 of the *Rules of Procedure of the Judicial Panel on Multidistrict Litigation,* 89 F.R.D. 273, 278–79 (1981), on January 19, 1983, a conditional transfer order was issued by the Judicial Panel on Multidistrict Litigation, transferring this action to the Western District of Oklahoma, pursuant to 28 U.S.C. § 1407. The purpose of the transfer was to coordinate or consolidate this action with 50 civil actions that had been transferred there on December 23, 1982, since this action involved questions of fact common to the actions previously transferred to Oklahoma. In January, 1983, the Judicial Panel on Multidistrict Litigation granted Continental Bank's request for a stay of the January 19, 1983, conditional transfer order pending this Court's ruling on Continental's motion to dismiss.

Once an order of transfer is entered, the jurisdiction of the transferor court ceases, 78 F.R.D. at 576, citing *In re Plumbing Fixture Cases,* 298 F.Supp. 484, 495–96 (Jud.Pan.Mult.Lit.1968). The transferee court assumes all subsequent jurisdiction over the action. *See Neville v. Cavanaugh,* 611 F.2d 673 (7th Cir.1979). However, the pendency of a motion to transfer before the Panel in no way affects the jurisdiction of the transferor court. *Neville,* 611 F.2d at 673, citing *In re Four Seasons Securities Laws Litigation,* 362 F.Supp. 574 (Jud.Pan.Mult.Lit.1973); Rule 16 of Rules of Procedure of the Judicial Panel on Multidistrict Litigation (1978). The transmittal of a transfer order may be stayed if any party files a notice of opposition with the clerk of the panel within fifteen days of the entry of the order. In light of the fact that Continental's request for a stay of the conditional transfer order was granted, we have considered its motion to dismiss. Once an order of transfer is entered in this case, our jurisdiction ceases, and all subsequent jurisdiction will be assumed by Judge Luther B. Eubanks of the Western District of Oklahoma.

1. Plaintiffs recently filed an amendment to their complaint, adding a number of parties as plaintiffs without filing a motion or seeking leave of court. Fed.R.Civ.Pro. 15(a) provides that a party may amend pleadings once as a matter of course before a responsive pleading is served, and otherwise only by leave of court or consent of the adverse party. Rule 21, moreover, provides that parties may be added by order of the court on motion by a party or on its own initiative, at any stage of the action and upon just terms. It thus appears that plaintiffs must file a motion to add parties to this lawsuit; Continental has indicated its opposition to this addition. This is therefore yet another issue that will be considered by the court in Oklahoma once a motion has been filed before it.

2. Paragraph 34 of the complaint identifies the following Oklahoma limited partnerships as the Longhorn Partnerships:

   Longhorn Gas Company, 1978 II
   Longhorn 1979 I Drilling Program
   Longhorn 1979 II Drilling Program
   Longhorn 1980 Private Drilling Program
   Longhorn & Associates, Ltd.
   Longhorn Developmental Program Ltd.
   Longhorn 1981 Private Drilling Program
   Longhorn Specified Property Drilling Program

3. Jurisdiction is asserted under Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v; Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) (as amended), 12 U.S.C. § 1819; 28 U.S.C. § 1331, and principles of pendent jurisdiction.

Count II fails to plead compliance with the statute of limitations and fails to allege that a fiduciary relationship existed between plaintiffs and Continental; and that Count III fails to state a RICO violation. Continental additionally seeks dismissal of Counts IV, V, VI (the Oklahoma Law counts) for failure to state a claim. In its alternative motion to strike, Continental argues that certain portions of the complaint should be stricken pursuant to Fed.R.Civ.P. 12(f) as "redundant, immaterial, impertinent or scandalous." For reasons set forth below, Continental's motion is granted as to Counts I, II and III, but plaintiffs are granted leave to amend their complaint.

### Facts

Plaintiffs allege that they each invested in the Longhorn partnerships, corporations "engaged in oil and gas exploration and production." According to plaintiffs, from 1978 continuing until the present, Continental with the Longhorn Partnerships [4] and the Penn Square entities [5] conspired to defraud plaintiffs in conjunction with the sale of the Longhorn partnership interests. Plaintiffs further allege that Continental, the Longhorn Partnerships and Penn Square caused investors to finance a portion of the Longhorn partnerships by furnishing letters of credit in favor of Penn Square and "by making false and misleading statements of material facts which were reasonably relied upon by plaintiffs" in making the investment. Plaintiffs' complaint alleges that Continental, Longhorn and Penn Square issued "false and misleading reports" concerning the success of the partnership, that Continental and other banks fraudulently obtained loans to generate banking business for Penn Square, and that Continental and certain other banks made loans to the Longhorn and Penn Square entities without conducting the usual credit investigations. Additionally, the complaint describes various unlawful activities attributed to Longhorn and Penn Square, which do not include defendant Continental.

Continental, in its motion to dismiss the complaint, alleges various pleading deficiencies in the complaint which we will consider in turn. When confronted by a motion to dismiss, courts must view the allegations contained in the complaint in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, unless a plaintiff cannot prove any set of facts in support of his claim that would entitle him or her to relief, the complaint should not be dismissed under Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102.

### Count I

Continental argues that the allegations of fraud in Count I of plaintiffs' complaint, which is based upon § 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), fail to satisfy the particularity requirement of Fed.R.Civ.P. 9(b). Rule 9(b) provides that:

> In all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

The demand for greater specificity in pleadings codified in Rule 9(b) serves a number of purposes. Complaints alleging fraud should seek redress for a wrong rather than attempting to discover unknown wrongs. *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd*, 636 F.2d 1201 (2d Cir. 1980), citing *Segal v. Gordon*, 467 F.2d 602,

---

**4.** *See note 1, supra.*

**5.** ¶ 24 of the complaint identifies Penn Square Bank, N.A. ("Penn Square") as a national bank that has its principal place of business in Oklahoma City; ¶ 35 of the complaint states that the persons and entities identified in paragraphs 6 through 22 are collectively referred to as the "Longhorn entities." The persons and entities identified in paragraphs 11 and 23 through 29 are collectively referred to as the "Penn Square entities."

608 (2d Cir.1974). Moreover, defendants must be protected from the harm that results from charges of serious wrongdoing, *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 419 (S.D.N.Y.1978), citing *Segan v. Dreyfus Corp.,* 513 F.2d 695, 696 (2d Cir.1975), as well as the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude. *Gross v. Diversified Mortgage Investors,* 431 F.Supp. at 1087. Finally, allegations of fraud must be concrete and particularized enough to give notice to the defendants of the conduct complained of, to enable the defendants to prepare a defense, *Id.*

■ Nevertheless, Rule 9(b) must be read in harmony with Fed.R.Civ.P. 8. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Therefore, a complaint which alleges securities fraud must state with particularity specific fraudulent acts comprising fraud. Rule 9(b), however, does not require plaintiff to plead detailed evidentiary matters.

■ In describing the circumstances constituting fraud, the plaintiff must describe the "time, place and particular contents of the false representations, as well as the identity of the party making the misrepresentation, and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982). Mere conclusory language which asserts fraud, without a description of fraudulent conduct, does not satisfy Rule 9(b). *Lincoln Nat. Bank v. Lampe,* 414 F.Supp. 1270, 1279 (N.D.Ill. 1976).

■ Where there are allegations of a fraudulent scheme with multiple defendants, the complaint must "inform each defendant of the specific fraudulent acts" which constitute the basis of the action against the particular defendant, *Lincoln,* 414 F.Supp. at 1278. In discussing a particular insufficiency of the complaint under Rule 9(b), that court noted that a particular defendant could not ascertain from the complaint which representation it was charged with having made, by whom and to whom the statements were given, the place and circumstances of the conversation, or, with a sole exception, the date of the utterance. As further evidence of the insufficiency of that complaint under Rule 9(b), the court stated that "all the representatives are lumped together, seemingly in an effort to imply that each defendant is responsible for statements made by the others." *Lincoln,* 414 F.Supp. at 1278. *See also Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981).

■ Where the allegations in the complaint are based "on information and belief," the general rule is that such allegations do not satisfy the particularity requirements of Fed.Rule 9(b). *Segal v. Gordon,* 467 F.2d at 608. Therefore, allegations of matters particularly within the knowledge of an adverse party must "be accompanied by a statement of facts upon which the belief is founded." 2A Moore's Federal Practice ¶ 9.03 (3d ed. 1982). In *Duane v. Altenburg,* 297 F.2d 515 (7th Cir.1962), a shareholder derivative suit, the court noted that

> while pleading on "information and belief" is permissible as to matters peculiarly within the adverse party's knowledge, it has also been held that allegations of fraud ... when made on "information and belief" must be accompanied by a statement of facts upon which the belief is founded. *Id.* at 518 (citation omitted).

■ In their complaint against Continental, plaintiffs uniformly fail to meet the standards required by Fed.R. 9(b). The majority of the allegations in the complaint fail to state with specificity the time[6] or circumstances[7] under which the alleged vi-

---

6. For example, with respect to allegations against defendant Continental, only ¶¶ 36, 37, 44(c) make any reference to the time frame of the alleged violations.

7. For example ¶ 39 states in part:
   > It was a further part of the conspiracy and scheme to defraud that, in connection with

olations or fraudulent acts took place. Plaintiffs fail to support their allegations with concrete examples, specific documents furnished to particular plaintiffs or instances in which one of the named plaintiffs was directly affected by Continental's activities. Nor do plaintiffs describe the "time, place and particular contents" of the false statements.

Additionally, although only Continental is named as a defendant, the complaint refers throughout to multiple parties.[8] As a result, Continental's alleged violations are lumped together with the actions of nondefendants in such a way that Continental cannot accurately discern the nature

of its role in the alleged violations. In still other portions of the complaint,[9] the allegations refer to Continental "and other banks acting in concert with them." Thus, even a careful reading of plaintiff's complaint will not result in Continental being informed of the "specific fraudulent acts" which constitute the basis of the complaint. *Lincoln,* 414 F.Supp. at 1278.

Where plaintiffs assert matters uniquely within the knowledge of Continental,[10] the complaint fails to supply the basis for these allegations as required by 9(b). Count I of plaintiffs' complaint, therefore, is dismissed without prejudice for failure to meet the requisites of Fed.R. 9(b).[11]

the offer and sale of the Longhorn and Penn Square entities, personally and by mail and wire, would and did wilfully, knowingly, intentionally or in reckless disregard of the truth make false and misleading statements of material facts, which were reasonably relied upon by plaintiffs, and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, among others, the following:

\*   \*   \*   \*   \*   \*

g. It was falsely represented that Penn Square had extended millions of dollars of credit to the Longhorn entities, partnerships operated by them, individuals associated with them, and affiliated enterprises because the Longhorn entities were very successful at finding oil and gas, had always fulfilled their obligations and were persons and entities of unquestioned business integrity and acumen.

8. *See,* for example, ¶ 38:
It was a further part of the conspiracy and scheme to defraud that defendant Continental Illinois and the Longhorn and Penn Square entities would and did cause investors in the Longhorn partnerships to finance a substantial portion of the purchase price by furnishing letters of credit in favor of Penn Square drawn on investors' local banks or by obtaining loans from Penn Square evidenced by promissory notes.

9. *See* ¶¶ 42, 44a, b, k. ¶ 42 states in part:
It was a further part of the conspiracy and scheme to defraud that the business of the partnerships would be designed to generate substantial banking business for Penn Square, defendant Continental Illinois and other banks acting in concert with them, in the form of fraudulently obtained personal, commercial, and production loans, and loans secured by letters of credit.

10. *See* ¶ 44(h) "Continental knew or should have known, the actual extent of Longhorn partnership reserves and the Longhorn partnership entities' self dealing."

11. Plaintiffs have leave to amend the complaint. Any amended complaint is to be filed with the transferee court in Oklahoma. *See* note *, supra.*
Continental also asserts that Count I fails to plead compliance with the statute of limitations. Plaintiffs in their memorandum in opposition to defendant's motion to dismiss concede that Count I should plead compliance with the statute of limitations governing section 12(2), and ask that the court grant them leave to amend the complaint. Accordingly, plaintiffs are granted leave to amend Count I of their complaint.
Continental further alleges that Count I is defective because plaintiffs have not complied with the tender requirements of Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*. While it is generally accepted that tender is a prerequisite to recovery under § 12(2), *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 748 (N.D.Ill.1981) citing *Wigand v. Flo-Tek, Inc.,* 609 F.2d 1028, 1034 (2d Cir.1979), the statute does not specify the timing, the place, nor the manner of such tender. *Adair,* 526 F.Supp. at 748. Where the complaint omits an offer to tender, in certain circumstances the language of the complaint may be interpreted as an implied offer to tender. *See, e.g.,* in *Wigand v. Flo-Tek, Inc.,* 609 F.2d at 1035 (request for 'recision' [sic] in *ad damnum* clause is implied offer to tender).
The complaint in the instant case, however, contains neither an express nor implied offer to tender. As a result. Continental's motion to dismiss Count I of the complaint for failure to comply with the tender requirements of Section 12(2) is granted; however, plaintiffs are granted

## Count II

Continental further alleges that Count II of plaintiff's complaint is defective because it fails to plead the existence of a fiduciary relationship between plaintiffs and Continental. In *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), the Supreme Court noted that "one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so." *Id.* at 228, 100 S.Ct. at 1114.[12] Chiarella, a printer, purchased stock based on inside information which he deduced from announcements of corporate takeover bids being printed where he was employed. The Supreme Court held that Chiarella could not be held liable for a criminal violation of section 10b since he had no special or fiduciary relationship with the sellers of the securities he had purchased. *Id.* at 232, 100 S.Ct. at 1116.

Nevertheless, the duty to disclose prior to the consummation of a transaction extends to not only parties in a fiduciary relationship, but also to parties who enjoy a "similar relation of trust and confidence between them." *Chiarella, Id.* at 228, 100 S.Ct. at 1114. *See also Issen*, 538 F.Supp. at 751, n. 9. However, the duty to disclose is limited in its scope and application. The duty to disclose under Rule 10b–5 does not require any person who is a party to a securities transaction to disclose all material, non-public information or refrain from trading, and a mere failure to disclose material information, absent other compelling legal circumstances, does not operate as a

fraud. *Dirks v. S.E.C.*, 681 F.2d 824, 837 (D.C.Cir.1982), *cert. granted*, —— U.S. ——, 103 S.Ct. 371, 74 L.Ed.2d 506 (1982). Rather, the duty to disclose "attaches only when a party has legal obligations other than a mere duty to comply with the general anti-fraud proscriptions in the federal securities law." *Id.* In *Rothschild v. Teledyne, Inc.*, 328 F.Supp. 1054 (D.C.Ill.1971), the court noted that before any liability may arise for nondisclosure under this section, "some relationship must exist between plaintiff and defendant which imposes a duty upon the defendant to disclose material information to plaintiff in connection with his purchase or sale of security." *Id.* at 1056. Moreover, "mere possession and nondisclosure of material facts does not confer liability." *Id.*

We have observed that in order to adequately plead securities fraud, plaintiffs must comply with the particularity requirements of Fed.R.Civ.P. 9(b). *Polera v. Altorfer, Podesta, Wooland & Co.*, 503 F.Supp. 116, 118 (N.D.Ill.1980), citing *Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975). While a complaint brought pursuant to Rule 10b–5 need not plead the existence of a fiduciary relationship per se, the instant complaint must allege some facts which establish a duty on the part of Continental to disclose information to plaintiffs. Plaintiffs' complaint is deficient insofar as it does not plead any nexus between them and Continental which would impose upon Continental a duty to disclose under Rule 10b–5. Count II is therefore dismissed without prejudice.[13]

---

leave to amend their complaint so that it properly alleges tender. *See Billet v. Storage Technology Corp.*, 72 F.R.D. 583, 586–87 (S.D.N.Y. 1976).

**12.** *Chiarella* was a criminal non-disclosure case under Rule 10b–5. In *Issen v. G.S.C. Enterprises, Inc.*, 538 F.Supp. 745 (N.D.Ill.1982) we noted that "since *Chiarella* is a criminal case, the Supreme Court's description of the contours of 10b–5 disclosure duty may not be applicable to the civil context of this case. In any event, however, the duty of disclosure in the civil context is at least as great as that described in *Chiarella.*" *Id.* at 751, n. 8.

**13.** With respect to defendant's allegation that Count II fails to plead compliance with the applicable statute of limitations, defendant cites Seventh Circuit cases supporting its assertion that the statute of limitations of Illinois Securities Law, Ill.Rev.Stat. ch. 121½ § 137.13(b) governs violations of § 10 and Rule 10b–5, which have no limitation provisions themselves. Because plaintiffs must clarify the complaint as to dates of the alleged occurrences before any determination of the complaint's compliance with the applicable statute of limitation can be made, this Court cannot make a determination concerning Count II's compliance with the statute of limitations. Furthermore, since any subsequent amendments to the complaint will be

### Count III

■ According to Continental, Count III of plaintiffs' complaint, which is brought pursuant to RICO, 18 U.S.C. § 1961 *et seq.*, fails to state a claim upon which relief can be granted. Continental argues that plaintiffs' allegation that Continental is both an "enterprise" and a "person" is fatal to the finding of a RICO violation, since a party cannot play the role of both entities under the statute.

To demonstrate a RICO violation, one must show the existence of an enterprise which affects interstate or foreign commerce, that defendant associated with or participated in the conduct of the enterprise's affairs and that defendant participated through a pattern of racketeering activity, 18 U.S.C. § 1962.

Section 1962 specifically makes it unlawful for any "person" to violate one of the proscribed activities under its provisions. Section 1961(3) defines a person to be "any individual or entity capable of holding a legal or beneficial interest in property." An "enterprise" is defined in § 1961(4) to include "any individual, partnership, corporation, associated with that enterprise." It follows that in a suit based upon a violation of section 1964(c) of RICO the cause of action must be asserted against the *person* who has engaged in the "unlawful" conduct and not against the enterprise. *See Parnes v. Heinald Commodities, Inc.*, 548 F.Supp. 20, 23 (N.D.Ill.1982). In *Bays v. Hunter Sav. Ass'n*, 539 F.Supp. 1020 (S.D. Ohio 1982), the court noted that "RICO

does not hold the enterprise criminally liable, but only those persons who seek to participate in the affairs of the enterprise through a pattern of racketeering activity." *Id.* at 1024. RICO therefore "clearly envisions a relationship between a 'person' and an 'enterprise' as an element of the offense which § 1962(c) proscribes." *Van Schaick v. Church of Scientology of Calif., Inc.*, 535 F.Supp. 1125, 1135–36 (D.Mass.1982).

An examination of the complaint shows that it fails to meet the requisites of the statute, for ¶ 69 asserts that "Defendant-Continental Illinois is an enterprise as defined by 18 U.S.C. § 1961(4)." Since RICO does not hold an enterprise criminally liable, the complaint fails to state a RICO violation. Plaintiffs appear to concede this, for in their reply brief they seek leave to amend Count III "to clarify that Continental is a person for purposes of RICO and that it engaged in activities prohibited by 18 U.S.C. § 1962(a)–(d)." This Court therefore dismisses Count III, but grants plaintiff leave to amend.

———

For the foregoing reasons, Continental's motion to dismiss Counts I, II and III is granted; plaintiffs, however, are given leave to amend their complaint subsequent to the transfer of this case to the Western District of Oklahoma. The motion to dismiss Counts IV, V and VI will be resolved subsequent to the transfer of this case by the Western District of Oklahoma. It is so ordered.[14]

filed in Oklahoma, it is likely that the Illinois Securities Law will not govern the complaint. Oklahoma law, and not Illinois law, may well be the source of the limitation provision. Therefore, the statute of limitations issue will be best resolved once the amended complaint is received by the Oklahoma court subsequent to the transfer of this case.

This Court, furthermore, declines to rule on defendant's motion to dismiss Counts IV, V and VI. First, plaintiffs seem to concede that there is little information in the complaint with respect to where the alleged incidents took place. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint (p. 11) states:

If the court deems further support for the applicability of Oklahoma law necessary, the

plaintiffs would amend paragraph 3 of the complaint to read "many of the acts alleged in this complaint occurred in Western District of Oklahoma, where the defendant does business and maintains offices." It also would amend paragraphs 38, 39 and 44 to show that Continental's participation in the scheme to defraud was centered primarily in Oklahoma. Second, because Oklahoma statutory and common law will apply to these counts, the issues raised by these counts will best be resolved by the federal district court sitting in Oklahoma subsequent to the transfer of this case.

14. Continental also filed a motion to strike immaterial and redundant allegations in plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(f). Our

resolution of this matter, however, renders unnecessary a decision on the motion to strike.