CORONET INSURANCE COMPANY, an Illinois insurance company, Plaintiff,

v.

Henry E. SEYFARTH, Robert E. Field, Fred W. Mansfield, and Vincent C. Yager, as Directors of Great Lakes Financial Resources, Inc.; Vincent C. Yager, Robert E. Field, Edward K. Aldworth, and Fred W. Mansfield, as Administrators of First National Bank of Blue Island Employees Stock Ownership Plan; Seyfarth, Shaw, Fairweather & Geraldson, an Illinois partnership, including professional corporations; First National Bank of Blue Island Employees Stock Ownership Plan; Great Lakes Financial Resources, Inc., a Delaware corporation, and Harris Trust & Savings Bank, an Illinois banking corporation, Defendants.

No. 86 C 1935.

United States District Court, N.D. Illinois, E.D.

July 16, 1987.

Nathan H. Dardick, Morton Denlow, Carolyn J. Gallagher, Dardick & Denlow, Chicago, Ill., for plaintiff.

Michael W. Coffield, Kevin M. Flynn, Steven J. Roeder, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for defendant Great Lakes Financial Resources, Inc.

J. Samuel Tenenbaum, David J. Eckert, Becker & Tenenbaum, Chicago, Ill., for defendant First Nat. Bank of Blue Island Employee Stock Ownership Plan.

Frank J. Dolan, Frank J. Dolan and Associates, Chicago, Ill., for defendants Henry E. Seyfarth, Robert E. Field, Fred W. Mansfield, Vincent C. Yager, and Edward K. Aldworth.

Francis D. Morrissey, Thomas F. Bridgman, Thomas A. Doyle, Baker & McKenzie, Chicago, Ill., for defendant Seyfarth, Shaw, Fairweather & Geraldson.

Ann Acker, Rick D. Bailey, John Weiss, Chapman & Cutler, Chicago, Ill., for defendant Harris Trust & Savings Bank.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff Coronet Insurance Company ("Coronet") brings this action for declaratory and injunctive relief, recission and damages alleging that defendants have acquired a controlling interest in defendant Great Lakes Financial Resources, Inc. ("Great Lakes"), a multibank holding company, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, Section 14(e) of the Exchange Act, 15 U.S.C. § 78n(e), the Racketeering Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., Section 144 of the Delaware General Corporation Law, 8 Del.Code § 144, and Delaware common law regarding breach of fiduciary duty. In addition to Great Lakes, Coronet has named as defendants Great Lakes' directors, the First National Bank of Blue Island Employee Stock Ownership Plan ("Blue Island ESOP") and its administrators, the law firm of Seyfarth, Shaw, Fairweather and Geraldson ("Seyfarth, Shaw"), and Harris Trust and Savings Bank ("Harris").

This matter is now before the court on the defendants' various motions to dismiss. For the reasons set forth below, the court grants defendants' motions to dismiss all counts of the complaint. However, the court grants Coronet twenty-one days from the date of this order in which to file an amended complaint, and grants defendants twenty-one days from the date the amended complaint is due in which to file answers to the amended complaint, if filed.

### I. Facts

Coronet is an Illinois insurance company which currently owns approximately 19,264 shares, or 8%, of Great Lakes' outstanding common stock. Great Lakes is a bank holding company organized under Dela-

ware Law. Great Lakes owns 100% of the outstanding common stock of First National Bank of Blue Island ("Blue Island Bank") and 97.89% of the outstanding common stock of Community Bank of Homewood-Flossmoor ("Community Bank"). As of February 10, 1986, Great Lakes itself had 238,928 outstanding shares of common stock. Blue Island ESOP is a trust organized under the Internal Revenue Code and the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104 et seq. Seyfarth, Shaw is an Illinois partnership engaged in the practice of law. Seyfarth, Shaw represents and advises Great Lakes, Blue Island Bank, Homewood Bank and Blue Island ESOP in legal matters related to this action, as well as other matters. Harris is an Illinois banking corporation.

Henry E. Seyfarth ("Seyfarth") is the chairman of the board of directors of Great Lakes and Great Lakes' largest shareholder, owning or controlling approximately 30.58% of Great Lakes' outstanding common stock. He is also the senior partner of Seyfarth, Shaw. Robert E. Field ("Field") is a member of Great Lakes' board of directors, and he owns or controls 1,196 shares, or approximately one-half of 1% of Great Lakes' outstanding common stock. Field is also an administrator of Blue Island ESOP and a partner at Seyfarth, Shaw. Vincent C. Yager ("Yager") is a member of the boards of directors of Great Lakes and Blue Island Bank, and an administrator of Blue Island ESOP. Yager is also the president and chief executive officer of Great Lakes and Blue Island Bank, and Yager owns or controls 2,689 shares, or approximately 1.1% of Great Lakes' outstanding stock. Fred W. Mansfield ("Mansfield") is a member of the boards of directors, and a high-ranking officer, of Great Lakes and Blue Island Bank. Mansfield owns or controls 1,200 shares, or approximately one-half of 1% of Great Lakes' outstanding common stock. Edward K. Aldworth ("Aldworth") is an administrator

of Blue Island ESOP and the senior vice president and chief credit officer of Blue Island Bank.

In September, 1984, the directors of Great Lakes created Blue Island ESOP. The directors chose four administrators for Blue Island ESOP, three from their own ranks: Field, Yager and Mansfield. In addition, Yager, Mansfield and the fourth administrator, Aldworth, are salaried officers of Great Lakes and/or Blue Island Bank.

In November, 1984, Seyfarth, Harry G. Robertson, a Great Lakes director, and Leslie I. McCord, a Blue Island Bank director, all Great Lakes shareholders, entered into a stock purchase agreement with Blue Island ESOP. Under the agreement, Blue Island ESOP would purchase 54.1% of Great Lakes outstanding common stock from the three shareholders, at $87.50 per share. However, in August, 1985, the Board of Governors of the Federal Reserve System ("Board") denied Blue Island ESOP's application to purchase these shares. The Seventh Circuit affirmed the Board's decision in *First National Bank of Blue Island Employee Stock Ownership Plan v. Board of Governors of the Federal Reserve System*, 802 F.2d 291 (7th Cir. 1986) (holding that the Blue Island ESOP is a "company" subject to regulation under the Bank Holding Company Act, 12 U.S.C. §§ 1841–50).

In November and December of 1985, the Great Lakes Directors received two letters of intent, one offering to purchase 100% of Great Lakes' outstanding common stock at $88 per share, and the other offering to purchase 100%, but not less than 80%, of Great Lakes' stock at $90 per share.[1] Coronet alleges that Seyfarth vetoed these offers, and the board of directors failed to make a recommendation on, or call a special meeting of the shareholders with regard to, these offers.

Coronet contends that the "Seyfarth group," which consists of the directors, the administrators and Seyfarth, Shaw, then

---

**1.** In addition, Clyde Engle, who owns and controls Coronet through a series of entities, offered to purchase 51% of Great Lakes' outstanding common stock at $105 per share in the fall of 1985. Great Lakes' board of directors refused Engle's offer allegedly out of concern for the rights of its minority shareholders.

"embarked on a secret scheme to entrench its control of Great Lakes, without investing any of its own money." *See* Complaint ¶ 37. The "Seyfarth group" allegedly caused Blue Island ESOP to extend a tender offer to purchase 20% of Great Lakes' outstanding common stock at $76 per share. The "Seyfarth group" obtained a four-million dollar loan from Harris for Blue Island ESOP to finance the tender offer. In order to induce Harris to make this loan, the "Seyfarth group" "secretly arranged for Great Lakes to guarantee the debt and to pledge substantially all of the common stock of its subsidiary banks, Blue Island Bank and Homewood Bank, as collateral for the loan." *See* Complaint ¶ 37.

On February 18, 1986, Blue Island ESOP issued its tender offer, which consisted of a written offer and a letter from Yager to Great Lakes shareholders. *See* Exhibits "A" and "B" to Complaint. According to Coronet, the "Seyfarth group" made many material misrepresentations and omissions in the offering papers which were designed to "disguise" the "true, unlawful" purpose of the tender offer—to place the "Seyfarth group" in control of Great Lakes. *See* Complaint ¶ 46.

On or about March 15, 1986, Coronet purchased 19,384 Great Lakes shares at $77 per share.[2] On that same date, Coronet, in response to Blue Island ESOP's tender offer, tendered 120 shares at $76 per share. The tender offer expired on March 17, 1986 at 4:00 p.m. At that time, Blue Island ESOP began to accept, on a *pro rata* basis, 47,786 of the tendered shares. The tender offer was oversubscribed.

Two days after the tender offer expired, on March 19, 1986, Coronet filed this complaint. Coronet alleges that it has suffered, and will continue to suffer, irreparable injury, in that (1) the value of its stock will be diminished because it will be permanently deprived of its ability to join together with other shareholders to vote effectively on proposals affecting corporate actions; (2) the value of its stock will also decrease because Great Lakes will lose its competitive position in the Illinois banking community as a result of the greater degree of investment risk inherent in the high level of debt secured by Great Lakes' assets; and (3) the value of its stock will also decrease because of Great Lakes' exposure to statutory fines and penalties, and possible loss of good will with the federal regulators, by virtue of its violation of federal banking laws and ERISA. Coronet asks the court to declare Great Lakes' guarantee and pledge of stock securing Blue Island ESOP's debt to be null and void, to order Harris to return to Great Lakes any and all instruments evidencing Great Lakes' pledge of assets, to enjoin defendants from using shares acquired in the tender offer to effect any structural changes in, or otherwise assert control over, Great Lakes, to order defendants to unwind and rescind all transactions that have taken place pursuant to the tender offer, to award treble damages under RICO, and to award attorney's fees, costs, and such other relief as the court deems equitable.[3]

---

2. Coronet purchased its shares from Robertson and McCord, who resigned from the Great Lakes board of directors and the Blue Island Bank board of directors, respectively, on March 17, 1986, the last day of the tender offer. Coronet also acquired options from Robertson and McCord to purchase an additional fifteen percent interest in Great Lakes.

3. The parties to this suit entered into an oral standstill agreement on March 27, 1986, which the court extended from time to time, and then, on May 12, 1986, extended until further order of the court. The standstill agreement provides in relevant part:

> [N]one of the parties will take any steps to amend the articles of incorporation, to amend the bylaws or to issue any securities or to sell, merge or otherwise engage in any similar transactions with respect to either Great Lakes Financial Resources, Inc., ... First National Bank of Blue Island, ... or the Community Bank of Homewood-Flossmoor ... without giving both the court and opposing counsel at least 48 hours' notice, and that can be oral or written.... [T]he First National Bank of Blue Island Employees Stock Ownership Plan agrees not to sell or pledge or further pledge any securities of Great Lakes, Blue Island or Homewood-Flossmoor without giving the same 48 hour notice to both the court and opposing parties.... [N]othing in this stipulation ... shall be deemed to prevent defendant from otherwise participating in the

## II.  Motion To Dismiss

The court may dismiss a complaint for failure to state a claim upon which relief may be granted only if it appears beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept all well-pleaded allegations of the complaint as true, and must view those allegations in the light most favorable to the plaintiffs. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987); *Vaden v. Village of Maywood, Illinois*, 809 F.2d 361, 363 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). However, the court need not accept as true legal conclusions alleged in the complaint. *Vaden*, 809 F.2d at 363.

### A.  Motion To Dismiss Counts I and II

In Count I, Coronet alleges that defendants violated Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e). That section provides:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices in connection with any tender offer.

In Count II, Coronet alleges that defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b–5. Rule 10b–5, promulgated pursuant to Section 10(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange,
>
> (a) to employ any device, scheme or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a materi-

al fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase and sale of any security.

Coronet alleges that defendants, in violation of Rule 10b–5 and Section 14(e), failed to disclose that (1) the purpose of Blue Island ESOP's tender offer, and the reason for the rejection of the earlier informal offers, was to entrench the Seyfarth Group's control of Great Lakes; (2) Great Lakes pledged substantially all of its assets as security for Blue Island ESOP's debt to Harris Bank; (3) a majority of Great Lakes' disinterested directors did not approve the pledge of assets; (4) the Seyfarth group did not intend to tender its Great Lakes stock to Blue Island ESOP; (5) the Seyfarth group controlled the administrators of Blue Island ESOP; and (6) the Seyfarth group, after Blue Island ESOP purchased twenty percent of Great Lakes stock, would control over fifty percent of Great Lakes stock. In addition, Coronet alleges that defendants affirmatively misrepresented, in violation of Section 14(e) and Rule 10b–5, that the purpose of the tender offer was to provide minority shareholders with a market for selling their shares and that pre-approval by the Federal Reserve Board and the Illinois Commissioner of Bank and Trust Companies was not required for the tender offer.

### 1.  Failure To Plead Fraud With Particularity

Defendants have moved to dismiss Counts I and II on various grounds. First, defendants assert that Coronet fails to plead fraud with particularity in Counts I and II, as required under Fed.R.Civ.P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

---

ordinary banking operations of Great Lakes, Blue Island or Homewood-Flossmoor.

*See* Transcript of March 27, 1986 Proceedings at 49–50.

with particularity." Rule 9's demand for greater specificity serves three purposes: (1) to inhibit the filing of a complaint as a pretext for discovery of unknown wrongs; (2) to protect defendants from the harm that results from charges of serious wrongdoing; and (3) to give defendants notice of the conduct complained of, enabling defendants to prepare a defense. *Bruss Co. v. Allnet Communications Services, Inc.,* 606 F.Supp. 401, 404–05 (N.D. Ill.1985); *D & G Enterprises v. Continental Illinois National Bank,* 574 F.Supp. 263, 266–67 (N.D.Ill.1983); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 744 (N.D.Ill.1981).

The particularity requirement of Rule 9(b), however, must be read in harmony with Fed.R.Civ.P. 8, which requires a short, plain and concise statement of a claim. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975); *Bruss,* 606 F.Supp. at 405; *D & G,* 574 F.Supp. at 267; *Adair,* 526 F.Supp. at 744. Reading Rules 8 and 9 together, it becomes apparent that, in a fraud action, a plaintiff must plead with particularity the circumstances constituting the fraud, including the time and place of the fraud, the contents of the omissions or misrepresentations and the identity of the party or parties perpetrating the fraud. However, the plaintiff need not plead detailed evidentiary matters. *Bruss,* 606 F.Supp. at 405; *D & G,* 574 F.Supp. at 267.

Where there are allegations of a fraudulent scheme with multiple defendants, as in the present case, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the action against the particular defendant. *Barr v. The Illinois Co., Inc.,* No. 84 C 2076 slip op. at 11–12 (N.D.Ill. Jan. 16, 1986) (Nordberg, J.) [Available on WESTLAW, DCT database]; *Bruss,* 606 F.Supp. at 405; *D & G,* 574 F.Supp. at 267; *Adair,* 526 F.Supp. at 744; *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278

(N.D.Ill.1976). Plaintiffs may not "lump" defendants together in general allegations of fraudulent activity, implying that each defendant is responsible for the statements and actions of others. *Lincoln,* 414 F.Supp. at 1278. Even where the role of each defendant is a matter particularly within the knowledge of the defendants, plaintiffs must make allegations as to each defendant "based on information and belief" and accompany the allegations with a statement of facts upon which the belief is founded. *Bruss,* 606 F.Supp. at 405; *D & G,* 574 F.Supp. at 267.[4]

In the present case, Coronet's complaint is completely devoid of allegations as to how any individual defendant participated in the fraud. In the paragraphs alleging omissions and misrepresentations in the tender offer papers, Coronet alleges at one point that the "Seyfarth group" failed to disclose material facts or made affirmative misrepresentations, *see* complaint ¶¶ 46, 47, and at another point that "defendants" so acted, *see* complaint ¶¶ 53, 55. No defendant can determine from the complaint which of the representations or omissions it is specifically charged with having made, or what role it is alleged to have played in the fraud, such as participant or aider and abetter. *See Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490 (7th Cir.1986) (law firm may violate Section 10(b) and Rule 10b–5 as aider and abetter). Indeed, in one paragraph, Coronet alleges that Harris has committed no wrongdoing, *see* complaint ¶ 16, while in another, Coronet alleges that all "defendants" made misrepresentations and omissions, *see* complaint ¶ 55.

■ There may be specific matters as to which it is appropriate to refer to some defendants collectively, and there may even be matters as to which each of the defendants was involved in the alleged wrongdoing. *Kennedy v. Nicastro,* 503 F.Supp. 1116, 1122 (N.D.Ill.1980). In any event,

---

**4.** *But see Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985) (plaintiff need not attribute acts to certain corporate insiders, as long as the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allega-

tions). This case differs from *Banowitz* in that, in the present case, as set out more fully in the text below, Coronet has made conflicting allegations as to which defendants participated in the fraud, and has failed to identify the role of any defendant in the alleged fraud.

Coronet owes defendants "the obligation to make a good faith differentiation throughout the complaint which will enable each defendant to know with what he or it is charged and to what he or it must make answer." *Id.* Accordingly, the court dismisses Counts I and II for failure to plead fraud with particularity.

### 2. Breach of Fiduciary Duty and the Scope of Sections 10(b) and 14(e)

In *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), minority shareholders of Kirby Lumber Corp. ("Kirby") sued on behalf of themselves and Kirby, alleging that Kirby's majority shareholder, Santa Fe Industries, Inc. ("Santa Fe"), violated Section 10(b) and Rule 10b–5 when it merged with Kirby under Delaware's short-form merger statute, Del.Code Ann., Tit. 8 § 253. According to the plaintiffs, defendants violated federal securities law by eliminating minority shareholders without prior notice and without a justifiable business purpose, and by placing a low value on the minority shares. The court of appeals found that plaintiffs' complaint stated a cause of action under Section 10(b) and Rule 10b–5 because Rule 10b–5 covers breaches of fiduciary duty by a majority against minority shareholders. *Santa Fe Industries, Inc. v. Green,* 533 F.2d 1283, 1287 (2d Cir.1976).

The Supreme Court reversed. According to the Court, Congress, in Section 10(b), intended to prohibit only conduct involving manipulation or deception; traditional state law breach of fiduciary duty claims are therefore not actionable under Section 10(b) and Rule 10b–5, unless the conduct alleged can fairly be viewed as "manipulative or deceptive" within the meaning of Section 10(b). *Santa Fe,* 430 U.S. at 473–74, 97 S.Ct. at 1301. "Deceptive" conduct requires an omission or misstatement of a material fact,[5] and "manipulative" conduct refers to practices "intended to mislead investors by artificially affecting market activity," the Court held. *Id.* at 474, 476–77, 97 S.Ct. at 1301–03. The Court stressed that Congress did not intend to take over for the States as corporate regulator in Section 10(b), but rather intended only to promote a "philosophy of full disclosure," ensuring that investors receive the information needed to make decisions. *Id.* at 477–79, 97 S.Ct. at 1303–04.

The Seventh Circuit extended *Santa Fe* in two respects in *Panter v. Marshall Field & Co.,* 646 F.2d 271 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). First, the court found that the *Santa Fe* analysis applies to actions under Section 14(e) as well as under Section 10(b) and Rule 10(b)–5. *Id.* at 282 (courts construe Section 14(e) and Rule 10(b)–5 *in pari materia* ), 285. *See also Schreiber v. Burlington Northern, Inc.,* 472 U.S. 1, 7–8, 105 S.Ct. 2458, 2462–63, 86 L.Ed.2d 1 (1985) ("manipulative" acts prohibited under Section 14(e) require misrepresentation or nondisclosure as under Section 10(b)). Second, the court found that, just as federal securities law does not govern breaches of fiduciary duty, federal securities law also does not cover the failure to disclose a breach of fiduciary duty or the failure to disclose any impure motive behind a breach of fiduciary duty. According to the court:

> In the wake of *Santa Fe,* courts have consistently held that since a shareholder cannot recover under 10b–5 for a breach of fiduciary duty, neither can he "bootstrap" such a claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transaction.

*Panter,* 646 F.2d at 288 (citation omitted). *See also Kademian v. Ladish Co.,* 792 F.2d 614, 622 (7th Cir.1986) (following *Panter* ). The critical issue, according to the *Panter* and *Kademian* courts, is not

---

5. "A material fact is one substantially likely to 'have assumed actual significance in the deliberations of the reasonable shareholder.'" *Panter v. Marshall Field & Co.,* 646 F.2d 271, 289 (7th Cir.) (*quoting TSC Industries, Inc. v. Northway,* *Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). *See also Flamm v. Eberstadt,* 814 F.2d 1169, 1174 (7th Cir.1987).

whether the defendant breached a fiduciary duty or failed to disclose a breach of duty or the reason behind a breach of duty, but "whether the conduct complained of includes the omission or misrepresentation of a material fact." *Panter*, 646 F.2d at 288. *See also Kademian*, 792 F.2d at 622.

The *Panter* court found that the plaintiffs had alleged only a breach of fiduciary duty and a failure to disclose the reason for the breach. In *Panter*, shareholders of Marshall Field & Co. ("Field's"), brought a class action under Sections 10(b) and 14(e) against Field's and its directors. According to the plaintiffs, defendants wrongfully deprived plaintiffs of the opportunity to sell their shares at a premium over market when defendants' acquisitions and expansion plans discouraged a takeover attempt. The court found that neither the acquisitions themselves, nor defendants' failure to reveal the motive behind the acquisition—their desire to remain in control of Field's—constituted deceptive or manipulative conduct within the meaning of Sections 10(b) and 14(e). *Panter*, 646 F.2d at 285, 289.

■ The court now finds the present case similar to *Panter* in all relevant re-spects. Coronet alleges that defendants breached their fiduciary duty to Great Lakes shareholders when defendants, in order to entrench their control over Great Lakes, discouraged informal offers to purchase Great Lakes stock, caused Blue Island ESOP to extend a tender offer, and, without a proper vote of disinterested directors, pledged substantially all of the stock of Great Lakes' subsidiary banks to secure the loan Blue Island ESOP needed to finance the tender offer. *See* Complaint at 33–34. As for "manipulative and deceptive" conduct in violation of Section 10(b), Rule 10(b)–5 and Section 14(e), Coronet alleges, in essence, only that defendants failed to disclose their breaches of fiduciary duty and their improper motive—to entrench their control of Great Lakes. This court, following *Panter*, will not allow Coronet to "bootstrap" what essentially amounts to a breach of fiduciary duty claim into a federal securities fraud claim. The court therefore dismisses Counts I and II on the alternative ground that the allegations contained in those counts do not fall within the scope of Sections 10(b) and 14(e).[6]

**6.** At this juncture, the court notes that Great Lakes has moved to dismiss the securities law counts on the related ground that Coronet lacks standing to bring this action on an individual, rather than derivative, basis. According to Great Lakes, Coronet has alleged as its injury only dimunition in the value of Great Lakes stock Coronet still owns. As this injury falls equally on all shareholders, the injury runs directly to Great Lakes and Coronet must therefore bring a derivative suit.

Several courts have held that corporate mismanagement which depresses the value of stock is a wrong to the corporation to be enforced by a derivative action. *See Cowin v. Bresler*, 741 F.2d 410, 414–16 (D.C.Cir.1984), and cases cited therein. Similarly, courts have held that federal antitrust and RICO actions must be brought on a derivative basis where the injury is a decrease in the value of the corporation's stock. *See Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), *cert. denied*, — U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

A shareholder has standing to sue contending fraud in connection with a stock transaction under Section 10(b) and Rule 10b–5 when he bought or sold stock in the transaction. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Also, a non-buying and non-selling shareholder may bring a derivative Section 10(b) and Rule 10b–5 action on behalf of his corporation, as long as the corporation was a buyer or seller in the allegedly fraud-ridden transaction. *Id.* at 738, 95 S.Ct. at 1926; *City National Bank of Fort Smith, Arkansas v. Vanderboom*, 422 F.2d 221, 228–29 (8th Cir.), *cert. denied*, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); *Surowitz v. Hilton Hotels Corp.*, 342 F.2d 596, 603–04 (7th Cir.1965), *rev'd on other grounds*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). *See generally* Hazen, *The Law of Securities Regulation* § 13.3 at 451 (1985).

A shareholder has standing to sue under Section 14(e) if he has been the target of solicitation for, or opposition to, a tender offer, and he has thus been faced with the decision of whether or not to tender his shares in response to the tender offer, even if he decided not to tender his shares. *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 38–39, 42 n. 28, 97 S.Ct. 926, 947–48, 949 n. 28, 51 L.Ed.2d 124 (1977) (implying that shareholder-offerees, the class Congress clearly intended to protect in enacting Section 14(e), have standing to sue under that section, even where they did not tender their shares in response to the tender offer). *See, e.g., Kademian*, 792 F.2d 614; *Panter*, 646 F.2d 271. *See also Plaine v. McCabe*, 797 F.2d 713, 717 (9th Cir. 1986); *Smallwood v. Pearl Brewing Co.*, 489

### 3. Failure To Plead Reliance

Defendants also move to dismiss Counts I and II on the ground that Coronet has failed to plead reliance on the alleged misstatements and omissions, as required under Section 14(e), Section 10(b) and Rule 10b–5. Coronet contends in response that the court must presume reliance when omitted or misrepresented information is material, and, if Coronet need not prove reliance, it need not allege reliance.

Traditionally, courts have allocated the burden of proof of reliance to the plaintiff in the case of a misrepresentation, and to the defendant in the case of an omission. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). *See Michaels v. Michaels,* 767 F.2d 1185, 1199–1200 (7th Cir.1985) (plaintiff must prove he was induced to act by defendant's material misrepresentation, but the court will presume reliance where the defendant withheld material information), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). Recently, however, the Seventh Circuit has held that reliance is not an independent element of a securities fraud claim, but a function of causation and materiality: reliance exists where there is a causal connection between the misrepresentation or omission and the plaintiff's harm. *Flamm v. Eberstadt,* 814 F.2d 1169, 1173–74 (7th Cir.1987); *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 527–30 (7th Cir.1985).

Coronet filed its forty-page, five-count complaint in this action four days after it purchased its Great Lakes shares at $77 per share from former Great Lakes and Blue Island Bank directors, four days after it tendered a small fraction of its shares at $76 per share in response to the tender offer, and a mere two days after the tender offer expired. Coronet fails to allege even once in its lengthy complaint that it relied on either the alleged omissions or misrepresentations in tendering its shares. Coronet also fails to allege a causal connection between the alleged misrepresentations and omissions and its injury. Coronet alleges in paragraph 52 of its complaint that the financing of the tender offer and defendants' alleged violations of federal banking laws and ERISA have caused the value of the Great Lakes stock Coronet retained after the tender offer to diminish. However, Coronet does not allege in paragraph 52, or in any other paragraph of the complaint, that the alleged failure to disclose or misrepresentation of the tender offer's purpose and financing caused Coronet any harm.

■ While, in omission cases, it appears that the court may still presume reliance where the alleged omitted information is material and reliance is objectively possible and logical, *Panter,* 646 F.2d at 284, such a presumption does not obviate the need for at least alleging reliance and causation, particularly in cases involving both alleged misrepresentations and omissions. *Id.* (*Affiliated Ute* did not abolish the reliance requirement). Accordingly, the court dismisses Counts I and II on the alternative ground of failure to plead reliance.[7] *Compare Levine v. Futransky.*

---

F.2d 579, 596 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Electronic Specialty Co. v. International Controls Corp.,* 409 F.2d 937, 946 (2d Cir.1969); *Bolton v. Gramlich,* 540 F.Supp. 822, 835 (S.D.N.Y.1982).

In this case, Coronet, along with other Great Lakes shareholders, was the target of solicitation for a tender offer, faced the decision of whether or not to tender its shares, and actually tendered some of its shares to Blue Island ESOP in response to the tender offer. Coronet was therefore a seller for purposes of Section 10(b) and Rule 10b–5, and a target shareholder for purposes of Section 14(e).

This court has found no case ruling that a seller under Section 10(b) and Rule 10b–5 and target shareholder under Section 14(e) must bring an action derivatively where the only alleged injury is dimunition in the value of the corporation's stock. Such a ruling would deprive Coronet of a cause of action under Section 10(b) in this case, as Great Lakes itself did not buy or sell its shares in the tender offer. The court need not reach this issue, however, given its ruling that Coronet's allegations do not fall within the scope of Sections 10(b) and 14(e) under *Santa Fe* and *Panter.*

7. Defendants have also moved to dismiss all of Coronet's claims for equitable relief. Coronet seeks, as relief under all counts except the RICO count, an injunction essentially rescinding the tender offer. Defendants contend that Coronet is not entitled to such an injunction because

636 F.Supp. 899, 900–01 (N.D.Ill.1986) (plaintiffs sufficiently alleged reliance to withstand a motion to dismiss their Section 10(b) claim).

### B. Motion To Dismiss Count III

In Count III, Coronet alleges that certain defendants violated Section 1962(a) of the RICO Act. According to Coronet, the directors and administrators engaged in a pattern of racketeering activity in order to acquire and solidify their control of Great Lakes. As predicate felonies, Coronet alleges that the directors and administrators, in furtherance of their scheme, violated Sections 10(b) and 14(e) of the Exchange Act, the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, the Federal Bank Holding Company Act ("FBHCA"), 12 U.S.C. § 1841 et seq., the Change in Bank Control Act ("CBCA"), 12 U.S.C. § 1817(j), and ERISA.

Defendants have moved to dismiss Coronet's RICO claim on various grounds. Defendants contend that Coronet lacks standing to bring this as a personal rather than derivative action, has failed to allege sufficient predicate acts, and has failed to allege a pattern of racketeering. The court finds all the asserted grounds for dismissal meritorious.

■ First, Coronet lacks standing to bring this RICO claim on other than a derivative basis. Coronet claims as injury only that the value of its Great Lakes stock has decreased. A decrease in the value of shares merely reflects a decrease in the value of the firm, an insufficient direct harm to give a shareholder standing to sue in his own right. *Rand v. Anaconda-Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985); *Gallagher v. Canon U.S.A., Inc.,* 588 F.Supp. 108, 110–11 (N.D.Ill.1984) (Shadur, J.). *Cf. People of State of Illinois v. Life of Mid-America Insurance Co.,* 805 F.2d 763 (7th Cir.1986) (only the directly-injured party may bring an action under RICO); *Carter v. Berger,* 777 F.2d 1173 (7th Cir.1985) (same). The court therefore finds that Coronet lacks standing to bring this RICO action in its individual capacity.

■ Second, Coronet has failed to adequately plead the required predicate acts. Of the predicate acts Coronet alleges, only securities, mail and wire fraud may serve as predicate acts under Section 1961(1) of the RICO Act. Since the court dismissed the securities fraud allegations in the preceding section of this opinion, only the mail and wire fraud allegations remain. *See Ray v. Karris,* 780 F.2d 636, 644 n. 7 (7th Cir.1985) (court did not consider securities fraud as predicate act where it concluded that plaintiff failed to state a claim for securities fraud).

As with the securities fraud counts, Coronet has failed to allege mail and wire fraud with particularity, as required under Fed.R.Civ.P. 9(b). *See Haroco, Inc. v. American National Bank,* 747 F.2d 384, 405 (7th Cir.1984) (where fraud is basis for RICO claim, Rule 9(b) applies), *aff'd,* 473

Coronet has an adequate remedy at law for any harm it has sustained, Coronet's request is too broad and would impair the rights of persons not before the court (other tendering shareholders), injunctive relief at this point in time, when the tender offer expired long ago, would be difficult if not impossible, and Coronet has unclean hands.

In order to obtain equitable relief, Coronet must clearly demonstrate irreparable harm and the inadequacy of legal remedies. *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *People of State of Illinois v. City of Milwaukee,* 599 F.2d 151, 165 (7th Cir.1979), *vacated on other grounds,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). As Coronet itself has couched its alleged "irrepara-

ble injury" in terms of the diminished value of its stock, *see* Complaint ¶¶ 55, 69, 74, the court finds that Coronet will have an adequate remedy at law: money damages based on the alleged diminished value of its Great Lakes stock. *See Unocal Corp. v. Pickens,* 608 F.Supp. 1081, 1083 (C.D.Cal.1985). Furthermore, the tender offer Coronet challenges in this action expired over one year ago; rescission at this date will be extremely difficult and unfair to the shareholders who tendered their shares in response to the tender offer. *See Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2nd Cir.1973); *MLZ, Inc. v. Fourco Glass Co.,* 470 F.Supp. 273 (E.D.Tenn.1978). Accordingly, the court grants defendants' motion to strike Coronet's claims for equitable relief.

U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Coronet fails to specify the time, place and contents of the alleged mail and wire fraud, the identity of the person making the representation and the consequences of the misrepresentation. Without this information, defendants cannot realistically defend themselves against the charge, and the court lacks information from which it may weigh the legal sufficiency of Coronet's claims. *See Gold v. Wolpert*, No. 84 C 4344 slip op. at 11–12 (N.D.Ill. April 29, 1987) (Nordberg, J.) [Available on WESTLAW, DCT database]; *Serig v. South Cook County Service Corp.*, 581 F.Supp. 575, 579 (N.D.Ill.1984).

 Third, Coronet has failed to sufficiently allege a pattern of racketeering activity as required. The Seventh Circuit has recently described a RICO pattern as "predicate acts sufficiently separate in time that they may be viewed as separate transactions." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987). *See also Marks v. Forster*, 811 F.2d 1108 (7th Cir. 1987); *Elliott v. Chicago Motor Club Insurance*, 809 F.2d 347 (7th Cir.1986); *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986); *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322 (7th Cir.1986). A RICO plaintiff must therefore allege specific facts in support of a claimed pattern, and Coronet's failure to identify the predicate acts and specify when they occurred renders this court's assessment of the alleged pattern impossible. *See Ray*, 780 F.2d at 644–45; *Gold*, slip op. at 12–13. For all of these reasons, the court grants defendants' motion to dismiss Coronet's RICO claim.

### C. Motion To Dismiss Counts IV and V

Coronet alleges that the "Seyfarth Group" breached its fiduciary duties to Great Lakes and its shareholders under Delaware law (Count IV) and that defendants violated Section 144 of the Delaware General Corporation Law when they pledged Great Lakes' assets without the approval of a majority of the disinterested directors (Count V). Having dismissed all of Coronet's federal claims, the court dismisses these pendent state law counts under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court notes, however, that Coronet clearly lacks standing to bring a breach of fiduciary duty claim on an individual, rather than a derivative, basis. *Cowin v. Bresler*, 741 F.2d 410, 414–16 (applying Delaware law).

### III. Conclusion

For all of the reasons set forth above, the court grants defendants' motions to dismiss all counts of the complaint.